Larry BOWYER d/b/a Lakes Limited Liability Corp., Appellant–Defendant,

v.

INDIANA DEPARTMENT OF NATURAL RESOURCES, Appellee–Plaintiff.

No. 09A02–0612–CV–1116.

Court of Appeals of Indiana.

March 20, 2008.

Robert Leirer Justice, Logansport, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Anita Wylie, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Larry Bowyer d/b/a Lakes Limited Liability Corp. ("Bowyer") brings this interlocutory appeal from the trial court's order establishing the average normal water level of Lake Cicott. Bowyer asserts three issues for review, which we consolidate and restate as:

1. Whether the trial court properly construed and applied Indiana Code Chapters 14–26–4 and 14–26–2.
2. Whether sufficient evidence supports the court's determination of Lake Cicott's average normal water level.

We affirm.

### FACTS AND PROCEDURAL HISTORY

The relevant facts are set out, in part, in our prior decision, *Bowyer v. Indiana Department of Natural Resources,* 798 N.E.2d 912, 914 (Ind.Ct.App.2003) (*"Bowyer I "*), as follows:

Bowyer is purchasing on contract a campground located on the southern shore of Lake Cicott in Cass County. In January 2000, [the Indiana Department of Natural Resources ("DNR")] filed a complaint against Bowyer and the seller of the campground, Karen Garling, alleging that Lake Cicott was a public lake and that Bowyer was dumping construction debris into the lake and altering its shoreline without a DNR permit as required by law. On December 11, 2000, the trial court entered a partial judgment finding that Lake Cicott was a public lake subject to DNR regulation, instead of a private lake as argued by Garling. We affirmed this judgment on appeal.

(Citing *Garling v. Ind. Dep't of Nat'l Res.,* 756 N.E.2d 1029 (Ind.Ct.App.2001), *aff'd on reh'g,* 766 N.E.2d 409 (Ind.Ct.App. 2002), *trans. denied).*

Based on the determination that Lake Cicott is a public lake, the trial court entered an injunction ("TRO") prohibiting Bowyer from "any and all excavation/construction activities, of any nature whatsoever, below the shoreline of Lake Cicott, until this cause is fully determined." *Bowyer I,* 798 N.E.2d at 914. DNR officials then determined, "for the first time," that Lake Cicott's "shoreline" was located at 702.2 feet above sea level. Id. at 915. As a result, the DNR filed a motion to hold Bowyer in contempt for violating the TRO, arguing that Bowyer had performed work below the 702.2–foot shoreline level. The trial court entered an order finding Bowyer to be in contempt of the TRO. Bowyer appealed, and this court reversed, holding that the TRO was vague because the meaning of "shoreline" was not apparent on the face of the TRO and that the DNR had not given Bowyer notice of its shoreline level determination. *Id.* at 919–20.

On December 16, 2004, Bowyer and Garling filed Defendants' Joint Motion to Order Formal Determination of Average Water Level of Lake Cicott. On April 25, 2005, over the DNR's objection, the trial court ordered the DNR to file a report pursuant to Indiana Code Section 14–26–4–3, which is necessary to make a formal determination of the average normal water level of Lake Cicott. On July 15, 2005, the DNR filed its Petition to Establish the Average Normal Water Level for Lake Cicott, attaching the DNR's report pursuant to the trial court's order.

The trial court held a hearing on the DNR's petition on March 23, 2006. On August 28, after briefing, the trial court entered its Findings of Fact, Conclusions

of Law and Judgment ("Judgment"). The Judgment provides, in relevant part:

### FINDINGS OF FACT

4. [Bowyer and Garling] filed Defendants' Joint Motion to Order Formal Determination of Average Water Level of Lake Cicott on December 16, 2004. On April 25, 2005, over [the DNR's] objection, this Court ordered [the DNR] to prepare and file the report required under Indiana Code [Section] 14–26–4–3 to begin the formal determination process.

5. On July 15, 2005, [the DNR] filed a Petition to Establish the Average Normal Water Level for Lake Cicott. The petition seeks to establish the legal lake level at 702.22 feet, National Geodetic Vertical Datum, 1929 ("NGVD'29")[1] for Lake Cicott in Cass County, Indiana. Pursuant to Indiana Code [Section] 14–26–4–3, the required report supporting [the DNR's] findings was attached to the petition.

6. Neither before nor after the December 11, 2000, Order entered herein determining Lake Cicott to be a public freshwater lake has there been a legally established water level.

### *DISCUSSION*

7. Under Indiana Code § 14–26–2–5(d) "the state (1) has full power and control of all the public freshwater lakes in Indiana both meandered and unmeandered; and (2) holds and controls all public freshwater lakes in trust for the use of all of the citizens of Indiana for recreational purposes[."]

8. Pursuant to Indiana Code § 14–26–2–5(e), "A person owning land bordering a public fresh water lake does not have the exclusive right to the use of the waters of the lake or any part of the lake." The law further charges the Indiana Department of Natural Resources with the preservation and stewardship of Indiana's lakes:

"Burns Ind.Code Ann. § 14–26–2–6. **Changing of level of water or shoreline**

A person may not change the level of the water or the shoreline of a public freshwater lake by:

(1) Excavating;

(2) Filling in; or

(3) Otherwise:

(A) Causing a change in the area or depth of; or

(B) Affecting the natural resources, scenic beauty, or contour of;

the lake below the waterline or shoreline without having a written permit issued by the [Indiana Department of Natural Resources]."[ ]

[ (Repealed 2006).] In order to assess the activities undertaken by Defendant Bowyer, [the DNR] relied on Ind.Code § 14–26–2–4(2), which states that "shoreline or water line" means,

2) If the water level has not been legally established, the line formed by the water[ ]surface at the average level as determined by:

(A) Existing water level records; or

(B) If water level records are not available, the action of the water that has marked upon the soil of the bed of the lake a character distinct from that of the bank with respect

---

1. "NGVD'29" stands for The Nation Geodetic Vertical Datum of 1929, known after May 10, 1973, as the Sea Level Datum of 1929. *See* U.S. Dep't of Commerce, Nat'l Oceanic & Atmospheric Admin., Nat'l Geodetic Survey, Frequently Asked Questions, http://geodesy. noaa.gov/faq.shtml# WhatVD29VD88 (last visited February 4, 2008).

to vegetation as well as the nature of the soil.

10. Thus, since the water level of Lake Cicott had not been legally established, [the DNR] was charged with determining the "shoreline or water line" either from existing water level records, which in the present case if any [sic], or by Ind.Code § 14–26–2–4(2)(B). The testimony revealed that there are no sufficient water level records to use to establish the legal level; therefore, [the DNR] had to refer to "the action of the water that has marked upon the soil[ ]of the bed of the lake a character distinct from that of the bank with respect to vegetation as well as the nature of the soil[,"] which is also referred to as the line of demarcation. Using the line of demarcation, [the DNR-]trained personnel picked nine (9) points around Lake Cicott, which were indicative of points where the action of the water has marked upon the soil of the bed of the lake a character distinct from that of the bank with respect to vegetation as well as the nature of the soil. The average elevation of those nine (9) points showed that the average normal water level is 702.22 NGVD'29. It was the 702.22 NGVD'29 level that has been used from the onset of this action.

11. Pursuant to Ind.Code § 14–26–4–3(1), [the DNR] prepared the report and attached the data necessary to establish the legal lake level of Lake Cicott. Under the facts and circumstances of the case, and based upon the credible evidence before the Court, the Court finds that [the] procedure followed by [the DNR] in establishing the water level was proper, appropriate, and as the law provides, especially where other data as contemplated by Ind.Code § 14–25–4–3(2) is unavailable.

12. There is no credible evidence submitted by the defense that the level should be something other than what the [DNR] has determined. The defense expert witness even agreed with the [DNR] process and levels when reconciling the 1929 and 1988 procedures. Without any reliable evidence that Lake Cicott should be established at a different level, this Court is left with no choice but to establish the level of Lake Cicott at 702.22 NGVD'29.

13. In determining the average normal water level, Ind.Code § 14–26–4–4 provides a list of sources upon which [the DNR] may draw for helpful information:

"The average normal water level shall be determined by means such as the following:

(1) Old surveys.

(2) Testimony of old inhabitants.

(3) The extent to which drainage and other artificial causes have increased or decreased the natural ground water of the area and affected the water levels of the lake.

(4) Water level measurements made by the following:

1. The United States Geological Survey.

2. The [DNR].

3. Other agencies.

4. Individuals.

(5) Any other pertinent surrounding facts or circumstances."

14. The language of Ind.Code § 14–26–4–4 and the panoply of sources suggests that each of such sources, when available, must be weighed as to individual or independent reliability, as well as against other sources used.

15. A significant number of exhibits were presented in the form of old newspaper articles, photos taken by different people over the years, aerial photos of the lake, Department of Transportation

highway plans from 1927, and old plats of the lake dated in the 1800's or early to mid 1900's. These exhibits generally presented pictures of the lake, but did not state what the lake level was in the pictures, nor anything more than anecdotal evidence, insufficient for qualitative judgment concerning lake level.

16. No old surveys were presented that were reliable in themselves for the determination of the lake level.

17. James Hebenstreit, Assistant Director of the Division of Water, testified that [the DNR] did communicate with citizens around Lake Cicott when [the DNR was] determining the lake level.

18. As to assessing "[t]he extent to which drainage and other artificial causes have increased or decreased the natural ground water of the area and affected the water levels of the lake," there was evidence that at some point a culvert, a twelve[-]inch corrugated metal pipe, was placed under the north-south road that skirts the east side of the lake. Water rising above 702.23 feet above sea level, NGVD'29, would enter such culvert....

19. It is unknown the degree to which highway right[-]of[-]way improvements from the time when U.S. Highway 24 was constructed, circa 1927, to the present may have affected water level.

20. Testimony revealed that water level measurements, to the extent any records were available, were used. [The DNR] used the records it made when establishing the line of demarcation earlier in the course of this case to determine the water level.

21. *There is no credible evidence submitted by the defense that the level should be something other than what the [DNR] has determined.* Again, the defense expert witness even agreed with the [DNR] process and levels when the

1929 and 1988 systems for sea level readings are reconciled. Without any reliable evidence that Lake Cicott should be established at a different level, this Court is left with no choice but to establish the level of Lake Cicott at 702.22 NGVD'29....

Appellant's App. at 12–15 (emphasis added). The trial court entered judgment finding that the "legal lake level for Lake Cicott in Cass County, Indiana, pursuant to Ind.Code [Chapter] 14–26–4 is established at 702.22 feet NGVD'29." *Id.* at 15. Bowyer now appeals.

## DISCUSSION AND DECISION

### Issue One: Statutory Construction and Application

Bowyer contends that the trial court incorrectly construed Indiana Code Sections 14–26–2–4 and 14–26–4–3. Specifically, Bowyer argues that under Indiana Code Chapter 14–26–2, to establish a shoreline or water line, "the clear inference is that … a single observation [of the water level] could be adequate, but where [Indiana Code Chapter 14–26–4] is the governing statute, at least ten years' observation is required." Appellant's Brief at 10. Thus, Bowyer argues that the trial court used an "incorrect legal standard" when it based its determination of "average normal water level," as defined by Indiana Code Section 14–26–4–1, on water level measurements taken in a single day. Appellant's Brief at 11. These issues present a matter of first impression.

Bowyer's argument that the trial court applied an incorrect legal standard is essentially a challenge to the trial court's construction of the statutes at issue. Thus, we review the trial court's decision de novo. *Burns v. Johnson (In re S.J.J.)*, 877 N.E.2d 826, 828 (Ind.Ct.App.2007). The goal of statutory construction is to

determine, give effect to, and implement the intent of the legislature. *Sales v. State*, 723 N.E.2d 416, 420 (Ind.2000). The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Id.*

Courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment. *MDM Invs. v. City of Carmel*, 740 N.E.2d 929, 934 (Ind.Ct.App.2000). If the legislative intent is clear from the language of the statute, the language prevails and will be given effect. *Hall Drive Ins., Inc. v. City of Fort Wayne*, 773 N.E.2d 255, 257 (Ind. 2002). "Where statutes address the same subject, they are *in pari materia*, and we harmonize them if possible." *U.S. Gypsum, Inc. v. Ind. Gas Co.*, 735 N.E.2d 790, 802 (Ind.2000).

Here, Bowyer first contends that the trial court erred by using the definition from Section 14–26–4–2 when the DNR's authority to determine Lake Cicott's average normal water level was invoked under Indiana Code Chapter 14–26–4. Indiana Code Chapter 14–26–3 confers upon the DNR the authority to initiate or be party to legal proceedings that affect the preservation or maintenance of public lakes. Ind.Code § 14–26–3–3. In that regard, the DNR is authorized to establish and maintain the "average normal water level" of Indiana's public lakes. Ind.Code § 14–26–4–2. The "average normal water level" is defined as follows:

> As used in this chapter, "average normal water level" of a lake means the level between the high water that occurs as a result of excessive precipitation and low water that occurs during protracted dry periods that will do the following:
>
> (1) Provide the most benefit to the public.

(2) Best protect the public health, welfare, and safety.

(3) Best preserve the natural resources of Indiana.

Ind.Code § 14–26–4–1 (emphasis added).

Further, the average normal water level:

> shall be determined by means such as the following:
>
> (1) Old surveys.
>
> (2) Testimony of old inhabitants.
>
> (3) The extent to which drainage and other artificial causes have increased or decreased the natural ground water of the are and affected the water levels of the lake.
>
> (4) Water level measurements made by the following:
>
> (A) The United States geological Survey.
>
> (B) The department [DNR].
>
> (C) Other agencies.
>
> (D) Individuals.
>
> (5) Any other pertinent surrounding facts or circumstances.

Ind.Code § 14–26–4–4. To establish the average normal water level of a public lake, the DNR must prepare a "concise report containing a description of the lake and location, together with all data necessary to reveal and fix: (1) the average normal water level or area of the lake; and (2) the highest elevation to which the water has risen during the prior ten (10) years." Ind.Code § 14–26–4–3. The DNR must file the report with the commission and with the "clerk of the circuit court with jurisdiction in the county in which the greatest area of the lake is situated." Ind.Code § 14–26–4–5.

Although Indiana Code Section 14–26–4–4 lists evidence that may be considered in determining a public lake's average normal water level, no section in Chapter 4 specifies the exact procedure for measuring the

average normal water level. Thus, we may look to related code sections to determine how to measure a public lake's water level. Indiana Code Chapter 14–26–2, entitled "Lake Preservation," contains a section on defining the water line of a public freshwater lake. The section provides, in relevant part:

> As used in this chapter, "shoreline or water line" means: . . . if the water level has not been legally established, the line formed by the water surface *at the average level* as determined by:
>
> (A) existing water level records; or
>
> (B) if water level records are not available, the action of the water that has marked upon the soil of the bed of the lake a character distinct from that of the bank with respect to vegetation as well as the nature of the soil.

Ind.Code § 14–26–2–4 (emphasis added).[2]

Here, the court's order established the "average normal water level" of Lake Cicott. The purpose of determining the average normal water level, in part, is to "[b]est preserve the natural resources of Indiana." *See* Ind.Code § 14–26–4–1. Because Indiana Code Chapter 4 does not provide a specific mechanism for measuring the "average normal water level," the trial court turned to the definition of "shoreline or water line" in Chapter 2,

governing lake preservation. The two chapters are *in pari materia* because both govern the management of public lakes. Thus, we cannot say that the trial court erred when it relied on a definition outside Chapter 4 in order to determine the average normal water level.

Still, Bowyer contends, for two additional reasons, that the trial court erred by applying the definition of "shoreline or waterline" from Indiana Code Section 14–26–2–4. First, he maintains that "where 14–26–4 is the governing statute, at least ten years' observation is required" in order to determine the *average* normal water level. Appellant's Brief at 10. In support, Bowyer cites to Indiana Code Section 14–26–4–3. As noted above, that section requires the DNR's report on the average normal water level to contain, in relevant part, *"all data necessary to reveal and fix . . . the highest elevation to which the water has risen during the prior ten (10) years."* Ind.Code § 14–26–4–3(2) (emphasis added).

But Bowyer misconstrues that statute. Indiana Code Section 14–26–4–3 does not require the DNR to have ten years of water level data in order to determine the average normal water level, nor does it require that the report actually state the highest elevation the water has reached in

---

2. Indiana Code Title 14, regarding Natural and Cultural Resources, contains two other statutes that define "water level" in some fashion. Indiana Code Section 14–8–2–181 defines "normal water level of a lake," for purposes of Indiana Code 14–26–5, as having the meaning set forth in Indiana Code Section 14–26–5–2. Indiana Code Chapter 14–26–5 governs the lowering of ten-acre lakes, and that chapter defines "normal water level of a lake" to mean:

> (1) the water level of the lake established by law; or
>
> (2) if the water level has not been established, the level where the presence and action of the water has been so constant as

to give to the bed of the lake a character distinct from that of the surrounding land with regard to vegetation and the nature of the soil.

Ind.Code § 14–26–5–2. And Indiana Code Section 14–26–8–2 defines "shoreline or water line" to "mean[ ] the line that is formed around the lake by the intersection of the water in the lake with the adjoining land when the surface elevation of the lake is: (1) normal; (2) at the average level; or (3) at the average normal level established by law." These definitions are neither more specific nor distinctly different from the definition of "shoreline or water line" in Indiana Code Section 14–26–2–4.

the last ten years. *See id.* Instead, the plain language of that statute requires the report to contain the *"data necessary to reveal and fix"* the highest elevation the water has risen in the past ten years. In other words, the report must contain the information necessary to compute the ten-year high water level, but the report need not compute that figure. *See id.* Thus, Bowyer's argument that computation of the average normal water level requires ten years of water level data is without merit.

In a similar vein, Bowyer contends that the court "never found an average but instead seized upon a single level as the 'average normal level.'" Appellant's Brief at 11. In support, Bowyer notes that an average is a number between two extremes, but the DNR "never determined the high water mark or the low water mark as contemplated by the statute." *Id.* But, again, Indiana Code Section 14–26–2–4 sets out the procedure to determine a lake's *average* water level, not just the water level on a particular day. Here, the DNR observed the average water level at nine points along Lake Cicott by observing the soil coloration, vegetative types, and lines of debris along the lake pursuant to Indiana Code Section 14–26–2–4. Thus, the trial court did not err when it followed the procedure in that statute and used water levels taken on a single day to determine the average normal water level of Lake Cicott.

### Issue Two: Sufficiency of Evidence

█ Bowyer next contends that the evidence does not support the trial court's determination that Lake Cicott's average normal water level is 702.22 feet NGVD'29. Where, as here, the trial court has entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment.[3] *Staresnick v. Staresnick,* 830 N.E.2d 127, 131 (Ind.Ct.App.2005). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law de novo. *Id.*

The DNR cited, in its report, Indiana Code Section 14–26–2–4 as the definition used to determine the average normal water level. The report further provides:

B.  While some lake level elevations have been recorded over the years, there are no day-to-day lake level records for any period of time on Lake Cicott.

C.  Since water level records do not exist, representatives of [the DNR] visited the lake on September 5, 2001 in order to ascertain the normal water level of the lake described in [Indiana Code Section 14–26–2–4(2)(B) ]. Using this criterion, representatives of [the DNR] picked nine (9) points along the

---

3.  Bowyer argues that there was documentary evidence showing the lake's water level and, therefore, the standard of review is de novo. In support, he cites to *Soc'y for Prevention of Cruelty to Animals v. City of Muncie,* 769 N.E.2d 669, 673 (Ind.Ct.App.2002). There, the trial court had entered findings and con-

clusions in support of the judgment. However, we applied a de novo standard of review because the facts of that case were governed by a stipulation of facts, so the trial court only applied the law. Here, there was no stipulation of facts. Thus, the cited case is inapposite.

shoreline of the lake that appeared to be representative of where the normal water level would meet the shoreline when the lake's water surface was at its average normal level. These points were picked based on soil coloration, vegetative types and lines of debris. The elevations of each point where [sic] then determined using standard surveying techniques referenced to a temporary benchmark set by [DNR] personnel. Personnel of the survey section of [the DNR's] Division of Water determined the mean sea level elevation of the temporary benchmark. . . .

D. The results of the Survey of September 4, 2001 are as follows: . . . Average Elevation = 702.22 feet, National Geodetic Vertical Datum, 1929.

Appellant's App. at 32.

The report shows that the DNR determined the average normal water level of Lake Cicott by locating nine points along the lake that appeared to represent the normal water level based on soil coloration, types of vegetation, and lines of debris. The DNR then measured the elevation of each of those points and averaged those elevations. The result is the DNR's determination that the average normal water level of Lake Cicott is 702.22 NGVD'29. The evidence shows that the DNR followed the procedure established in Indiana Code Section 14–26–2–4, which we approved above. Thus, we cannot say that the evidence does not support the trial court's finding that Lake Cicott's average normal water level is 702.22 NGVD'29. Bowyer's contentions on that issue must fail.

Still, Bowyer argues that the trial court ignored documentary evidence of Lake Cicott's water level and that there was sub-

stantial documentary evidence to show that Lake Cicott's average normal water level is something other than 702.22 NGVD'29. But the trial court found that Bowyer submitted no credible evidence that the water level should be something other than what the DNR determined. Moreover, Bowyer's arguments amount to a request that we reweigh the evidence, which we cannot do. *Staresnick*, 830 N.E.2d at 131. Thus, Bowyer's contentions are without merit.

Affirmed.

KIRSCH, J., and CRONE, J., concur.