**FRATERNAL ORDER OF POLICE, EVANSVILLE LODGE, NO. 73, INC., Appellant–Plaintiff,**

v.

**CITY OF EVANSVILLE, Indiana, Appellee–Respondent.**

No. 82A04–1002–PL–00094.

Court of Appeals of Indiana.

Oct. 8, 2010.

Publication Ordered Nov. 16, 2010.

Charles L. Berger, Jennifer Ulrich–Keppler, Berger and Berger, LLP, Evansville, IN, Attorneys for Appellant.

David L. Jones, Robert W. Rock, Evansville, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

The Fraternal Order of Police, Evansville Lodge No. 73, Inc. ("the FOP") filed a complaint in Vanderburgh Superior Court against the City of Evansville ("the City") alleging that the City had breached the terms of their collective bargaining agreement. After a bench trial, the trial court concluded that the City had not breached the collective bargaining agreement and entered judgment in favor of the City. The FOP appeals and raises two arguments, which we consolidate and restate as: whether the trial court erred when it concluded that the City did not breach the collective bargaining agreement by reducing the number of patrol sergeants allowed to work on holidays.

We affirm.

### Facts and Procedural History

The issues presented in this appeal arise from a collective bargaining agreement executed between the City and the FOP for the period of January 1, 2001 through December 31, 2004. The agreement provides in pertinent part:

ARTICLE XIX–MANAGEMENT RIGHTS

It is recognized that the Employer has and will continue to retain the rights and responsibilities to direct the affairs of the police department in all of its various aspects. Among the rights retained by the Employer are the Employer's rights to direct the working forces, to plan, direct and control all operations and services of the police department, to determine the methods, means, organization and personnel by which such operations and services are to be conducted; to make and enforce reasonable rules and regulations; to change or eliminate existing methods, equipment or facilities; provided, however, that the exercises of any of the above rights shall not conflict with any of the expressed written provisions of this Agreement or any laws or statutes of the State of Indiana.

Appellant's App. p. 81.

Further, the agreement guarantees that the patrol division shall work a "Four and Two" schedule meaning officers work four days on duty and have two days off. Officers working a "Four and Two" schedule receive an additional sixteen days off per year compared to officers who work the "Five and Two" schedule. *Id.* at 21, 81–82. Finally, under the agreement, officers working on a designated holiday are compensated by one of the following methods at the option of the officer: "(a) [c]ompensatory time at a rate of one and one-half (1½) times the actual hours worked[,] OR (b) [p]aid overtime at a rate of one and one-half (1½) for the actual hours worked." *Id.* at 60.

On January 15, 2004, the holiday staffing schedule for the Criminal Investigation Division was changed to obtain cost savings within that division. As a result of the staffing change, Sergeant Bret Fitzsim-

mons filed a grievance with the approval of the FOP, claiming that the Criminal Investigation Division investigators and supervisors were treated unfairly compared to the officers in the patrol division because the staffing change did not apply to the patrol division. Sergeant Fitzsimmons's grievance was ultimately resolved by applying the new holiday staffing policy to both the patrol and criminal investigations divisions.

Therefore, on August 16, 2004, a memorandum was issued to all patrol division line sergeants, which stated that the number of patrol sergeants allowed to work on holidays would be the same as minimum daily staffing, i.e., no more than two sergeants per shift Sunday through Thursday, and no more than three sergeants per shift on Fridays and Saturdays. The first holiday the new holiday minimum staffing schedule applied to the patrol division was Labor Day, September 6, 2004.

On September 14, 2004, Patrol Sergeants Richard Hubbard, Loren Martin, and Doug Schneider filed grievances with the approval of the FOP claiming that the holiday minimum staffing schedule violated Articles V and XX of the collective bargaining agreement by forcing said officers to use compensatory time from the officers' compensatory time banks and by not allowing the officers to work a "Four and Two" schedule as required by the agreement. The grievances were denied by Police Chief Brad Hill.

On November 15, 2004, the FOP filed a complaint against the City in Vanderburgh Superior Court alleging that the City breached the collective bargaining agreement by preventing patrol sergeants from earning their holiday pay. A bench trial was held on the FOP's complaint on August 10, 2009. On October 22, 2009, the trial court entered findings of fact and conclusions of law and concluded that the City had not breached the parties' collective bargaining agreement. Specifically, the trial court found:

5. No provision of the [agreement] guarantees that officers or sergeants can work holiday overtime. Nonetheless, the [FOP] claims that, by implication, the "Four and Two" provision of the [agreement] guarantees that an individual may work on a holiday if his/her individual work schedule called for him/her to work on a particular holiday because the [agreement] guarantees that the patrol division will work the "Four and Two" schedule. The [FOP] claims that this provision of the [agreement], by implication, prevents the [Evansville Police Department] from altering an individual's "Four and Two" schedule.

31. A police officer may utilize any accumulated time in his/her compensatory time bank by taking from one (1) to eight (8) hours of time off a regularly scheduled workday as approved by his/her commanding officer. However, a police officer may not be ordered by his/her superior to take time off work and utilize the officer's accumulated compensatory time in his/her compensatory time bank.

32. When sergeants did not work because their schedule did not call for them to work, they were compensated correctly.

33. In particular, when sergeants did not work on a holiday because their schedule did not call for them to work, they received: (a) 1/365th of their salary; and (b) eight (8) hours of holiday straight (HS) pay, which they could either elect to take as an addition to their compensatory time bank, or as additional pay. . . .

34. When sergeants worked on a given holiday, they were compensated correctly.

35. If a sergeant works a regular eight (8) hour shift on a holiday, he/she receives the following compensation: (a) he/she receives his/her 1/365th of his/her salary; and (b) eight (8) hours of holiday overtime (HO) pay (paid at the rate of one and one-half (1½) times of base salary, equivalent to twelve (12) hours), which he/she may elect to receive either as an addition to his/her compensatory time bank, or as additional pay.

36. When a sergeant was scheduled or forced off on a holiday because of the minimum staffing policy, he/she: (a) received 1/365th of his/her salary; and (b) the day off.

Appellant's App. pp. 21–22, 27–28. The trial court concluded that the City did not breach the terms of the collective bargaining agreement because the "terms and provisions of the [agreement] permit [the City] to implement a holiday minimum staffing policy." The FOP now appeals. *Id.* at 33. Additional facts will be provided as necessary.

### Standard of Review

The trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), and therefore, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *Bowyer v. Ind. Dep't of Natural Res.*, 882 N.E.2d 754, 761 (Ind.Ct. App.2008). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses but consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law de novo. *Id.*

### Discussion and Decision

The FOP argues that the trial court erred when it concluded that the City did not breach the collective bargaining agreement by implementing the holiday minimum staffing policy. Specifically, the FOP argues: "The expressed terms of the contract between the FOP and the City prevented the City from forcing off sergeants as occurred in this case, including holidays, because it required the [sergeants] to use their comp time without any officer's consent." Appellant's Br. at 14. Further, the FOP claims that the City "violated the contract by ordering sergeants off on scheduled days within their 4 & 2 schedule" and the City's holiday minimum staffing policy deprived sergeants their contractual right to work on holidays, which denied the officers of his or her additional twelve hours of holiday compensation. *Id.* at 13.

The construction of the terms of a written contract is a pure question of law, which we review de novo. *Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind.2008).

When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. First, we must determine whether the language of the contract is ambiguous. The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract. If, on the other hand, a contract is ambiguous, its meaning must be determined by examining extrinsic evidence and its construction is a matter for the fact finder. When interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was made. We do this by

examining the language used in the instrument to express their rights and duties. We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless. We must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict.

*Whitaker v. Brunner,* 814 N.E.2d 288, 293–94 (Ind.Ct.App.2004), *trans. denied* (citations omitted).

■■■■ First, we observe that the City's decision to implement the holiday minimum staffing policy was authorized under the "Management Rights" section of the agreement, which provides:

It is recognized that the Employer has and will continue to retain the rights and responsibilities to direct the affairs of the police department in all of its various aspects. Among the rights retained by the Employer are the Employer's rights to direct the working forces, to plan, direct and control all operations and services of the police department, to determine the methods, means, organization and personnel by which such operations and services are to be conducted; to make and enforce reasonable rules and regulations; to change or eliminate existing methods, equipment or facilities; provided, however, that the exercises of any of the above rights shall not conflict with any of the expressed written provisions of this Agreement or any laws or statutes of the State of Indiana.

Appellant's App. p. 81. Accordingly, we need only consider whether the City's exercise of its right to implement the new policy conflicted with any other provision of the agreement.

The collective bargaining agreement provides that officers "shall be guaranteed working a 4/2 working schedule" meaning officers work four days and have two days off. *Id.* at 81. Under the minimum holiday staffing policy, officers who were scheduled to work on a holiday, but told not to report to work, still received a full eight hours of pay for that day. Accordingly, under the new policy, officers were paid as if they had worked a "4/2 working schedule." However, because the officers did not actually work the holiday, they did not receive holiday overtime pay.

The collective bargaining agreement defines holiday overtime as "compensatory time at a rate of one and one-half (1½) times the actual hours worked" or "[p]aid overtime at a rate of one and one-half (1½) the actual hours worked." Appellant's App. p. 60. Officers who were scheduled to work and actually worked on a holiday under the reduced staffing guidelines were paid at this rate. The agreement provides that holiday overtime pay is credited to "any officer who works on a holiday" but lacks any guarantee that officers must be allowed to work on holidays.

Furthermore, the trial court found that Patrol Sergeants Doug Schneider, Richard Hubbard, and Loren Martin each had the same number of hours in their compensatory time banks both before and after the holiday they were not permitted to work, and not working on either the Labor Day or Election Day holiday did not cause a reduction in their regular pay. *See* Appellant's App. pp. 24–25. These findings are supported by the evidence. *See* Tr. pp. 15, 34, 120–21, Ex. Vol., Defendant's Ex. C.

Because the collective bargaining agreement does not contain any provision guaranteeing the right to work on holidays, and the sergeants were paid as if they had worked their customary "4/2 working schedule," we conclude that the City's exercise of its right to direct and control the

operations of the police department by implementing the holiday minimum staffing policy did not conflict with any other provision of the agreement. Challenging economic conditions require everyone to institute cost-saving measures and governmental units are no exception. If such cost-saving policies are equitable, and not violative of any agreement, they are not cause for reasonable complaint.

For all of these reasons, we conclude that the trial court properly found that the City did not breach the collective bargaining agreement and affirm the trial court's judgment in favor of the City.

Affirmed.

BAKER, C.J., and NAJAM, J., concur.

## ORDER TO PUBLISH MEMORANDUM DECISION

On October 8, 2010, this Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, City of Evansville, by counsel, has filed a Motion to Publish Memorandum Decision.

Having considered the matter, this Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Motion to Publish Memorandum Decision is GRANTED and this Court's opinion heretofore handed down in this case on October 8, 2010, marked Memorandum Decision, Not for Publication in now ORDER PUBLISHED.