## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 29 2016, 8:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott E. Yahne
Yahne Law, P.C.
Munster, Indiana

ATTORNEYS FOR APPELLEE

John P. Reed
Abrahamson, Reed & Bilse
Hammond, Indiana

David E. Wickland
Munster, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Northwest Oral Surgeons, P.C., *Appellant-Defendant,* | September 29, 2016 |
| | Court of Appeals Case No. 45A03-1604-PL-734 |
| v. | Appeal from the Lake Superior Court |
| Joseph Lovasko, D.D.S., *Appellee-Plaintiff.* | The Honorable Bruce D. Parent, Special Judge |
| | Trial Court Cause No. 45D04-1112-PL-125 |

**Bailey, Judge.**

# Case Summary

Joseph Lovasko, D.D.S. ("Dr. Lovasko") brought suit against Northwest Oral Surgeons, P.C. ("Northwest") for breach of a severance agreement, *inter alia*. Northwest countersued, alleging that Dr. Lovasko failed to repay a loan from Northwest, and that Dr. Lovasko was obligated to repay Northwest for certain deficits related to Dr. Lovasko's failure to satisfy payment obligations associated with unearned compensation that Northwest had paid in advance. The matter proceeded to a bench trial. The trial court found that Northwest breached the terms of the severance agreement with Dr. Lovasko, and that Northwest was entitled to an offset against its liability to Dr. Lovasko as a result of his failure to repay the loan. Dr. Lovasko filed a motion to correct error related to the calculation of the damages owed by Northwest; the trial court entered a corrected award of damages with respect to Dr. Lovasko's damages and corrected Northwest's offset against the judgment, to incorporate both the loan and the deficit from compensation Northwest had paid in advance. Northwest now appeals the trial court's determination of damages.

We affirm.

# Issues

Northwest raises several issues on appeal. We find two dispositive:

    I.    Whether the trial court erred in its construction of contract provisions related to the determination of the date of Dr.

Lovasko's disability for the purposes of calculating his severance benefit; and

II.    Whether the trial court erred in calculating the amount of Dr. Lovasko's severance benefit.

# Facts and Procedural History

We present the facts of this case in conformance with the standard of review, and focus only on those facts relevant to the issues now before us.[1]

Dr. Lovasko was, until 2011, employed as a dentist with Northwest and its predecessor corporation.[2]  Dr. Lovasko, along with Dr. Paul Wolf ("Dr. Wolf"), another member of the practice, were shareholders in Northwest and the predecessor corporation.

In 2002, after a restructuring of the practice along with Dr. Wolf and another dentist, Dr. Lovasko and Northwest entered into a Restatement of Severance Benefits Agreement ("the Severance Agreement").  The Severance Agreement

---

[1] The statement of facts portions of both parties' briefs fail to conform to the standards set forth in our Appellate Rules and case law.  Northwest advances an argumentative presentation of the facts that focuses on its preferred interpretation of contract provisions and evidence, and Dr. Lovasko's statement of facts also includes argumentation.  We remind counsel that the statement of facts "shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed," Ind. Appellate Rule 46(A)(6)(b), and that the statement of facts "must also be devoid of argument." *Ramsey v. Review Bd. of Indiana Dep't of Workforce Dev.*, 789 N.E.2d 486, 489 (Ind. Ct. App. 2003).  Further, Northwest's statement of the case cites large portions of the trial court's orders.  We remind counsel that the statement of the case "shall *briefly* describe the nature of the case, the course of the proceedings relevant to the issues presented for review, and the disposition of these issues by the trial court or Administrative Agency."  App. R. 46(A)(5) (emphasis added).

[2] For convenience's sake, we refer throughout to Northwest and all predecessor corporations as Northwest.

provided for a calculated severance benefit for Dr. Lovasko or his estate in the event of death, disability, retirement, or other situations related to separation of employment. Dr. Lovasko was defined in the agreement as an Equal Shareholder Employee. Under the Severance Agreement, an Equal Shareholder Employee's estate was entitled, upon death, to "a Death Severance Benefit equal to eighty (80%) percent of the average of the annual compensation paid to an Equal Shareholder Employee for the eight (8) quarters preceding the date of death." (Appellant's App'x at 44.)

[7] The same benefit was to inure to a permanently disabled Equal Shareholder Employee, with the exception that the severance benefit would be reduced by the amount of any disability payments made to the Equal Shareholder Employee from insurance funds under any disability insurance policies purchased by Northwest. Permanent disability was defined to mean an employee's "inability to fully perform services for or on behalf of [Northwest]" as required by any employment agreements where the condition giving rise to the inability to perform "continu[ed] for a period of one (1) year." (Appellant's App'x at 44.)

[8] Beginning around 2008, Dr. Wolf sought to change Northwest's compensation model from one where dentists shared revenues to one where dentists were paid entirely on a production-based compensation model—that is, relative to each dentist's contribution to revenues, less certain overhead costs. Dr. Lovasko did not agree to this plan in its entirety. Nevertheless, compensation of physicians moved toward the production model, with salary taking the form of an advance

against each doctor's future revenues. Northwest would also pay as an advance certain expenses for each dentist, such as marketing, cellular phones, and vehicle use, and dentists became eligible for production bonuses upon reaching certain revenue milestones. Also during this timeframe, in 2009, a third dentist, Dr. Sherif Mekhail ("Dr. Mekhail") became an Equal Shareholder Employee alongside Drs. Lovasko and Wolf.

[9] In May 2011, Dr. Lovasko incurred back injuries that prevented him from continuing to work for Northwest. Dr. Lovasko's final day of work was May 2, 2011. On September 16, 2011, Dr. Lovasko announced his retirement.

[10] Conflict over compliance with various agreements arose between Dr. Lovasko on the one hand and Northwest and Drs. Wolf and Mekhail on the other. On August 2, 2011, Dr. Lovasko filed a complaint in the trial court, setting out multiple counts against the various defendants, including breach of contract and fiduciary duties with respect to shareholder and employment agreements, fraud, and wage claim violations. Dr. Lovasko also alleged that Northwest breached the provisions of the Severance Agreement.

[11] On November 15, 2011, Northwest answered the complaint and asserted counterclaims. Among the counterclaims were allegations that Dr. Lovasko had failed to repay a loan that Northwest had extended to him, and that Dr. Lovasko owed money to Northwest to compensate for deficits related to his failure to draw in sufficient revenues to cover the cost of his salary and other compensation.

[12] After motions for summary judgment, the trial court disposed of a number of the counts in Dr. Lovasko's complaint. Other counts, including Dr. Lovasko's claim that Northwest breached the Severance Agreement and Northwest's claims concerning the loan and deficit attributable to Dr. Lovasko, remained for trial.

[13] On June 24, 2015, Northwest filed a written motion for findings of fact and conclusions thereon. A bench trial was conducted on June 24, 25, and 26, 2015. During the trial, live or deposition testimony was offered by Drs. Lovasko, Wolf, and Mekhail; Jack Weichman, Northwest's accountant; and several other witnesses.

[14] At the conclusion of the trial, the court took the case under advisement. On November 9, 2015, the trial court issued findings of fact and conclusions thereon and entered judgment. The trial court found that Northwest had breached the Severance Agreement. The court construed the agreement to require that the appropriate look-back period for calculating the severance benefit commenced with the quarter prior to Dr. Lovasko's last day of work in May 2011. The court further construed the contract to required that the severance benefit be calculated with reference to all three doctors' compensations, and found that that the proper measure of that compensation was the average across the three dentists of the top-line value of all the income available for allocation to partners after revenues were allocated to cover the overhead of running the business itself. Based upon this construction, the trial court found that Northwest owed Dr. Lovasko a severance benefit of $122,152,

as well as $10,416 for certain expenses incurred by Dr. Lovasko for which Northwest had not provided compensation. (Appellant's App'x at 41, 42.) The trial court also found that Dr. Lovasko had failed to repay the loan Northwest had given him, and determined the amount of that debt to be $10,000. (Appellant's App'x at 43.) With the offset, the court's aggregate judgment in favor of Dr. Lovasko was $122,568. (Appellant's App'x at 43.)

[15] On December 8, 2015, Dr. Lovasko filed a motion to correct error in which he challenged the trial court's calculation of the severance benefit. Dr. Lovasko argued that the trial court's calculation was a correct calculation of the average quarterly compensation called for in the Severance Agreement, but that the court had failed to annualize that amount and should have entered judgment in the amount of $488,608—four times the trial court's calculation in its order after trial. In response, Northwest argued that the trial court had misconstrued the Severance Agreement when the court used a look-back period that commenced at the time Dr. Lovasko's injury started, rather than the one-year mark defining permanent disability in the contract; that the trial court erred in using the compensation available to all three dentists instead of only that available to Dr. Lovasko; and that the court should have used only the gross salary paid to Dr. Lovasko, and not the top-line figure of all funds available for allocation. Northwest also argued that the trial court had erred when it did not find that Northwest was entitled to compensation of the funds it had advanced to Dr. Lovasko. Moreover, each party sought pre-judgment interest on their claims.

[16]     A hearing was conducted on the motion and Northwest's response. On February 4, 2016, the trial court entered its order in response to the motion to correct error and the responsive briefing. The court agreed with Dr. Lovasko that while its calculations were correct, it had failed to properly extend the quarterly average compensation over the course of a year. The court therefore quadrupled the severance benefit from $122,152 to $488,608, and reaffirmed the award of $10,416 in compensation for expenses. (Appellant's App'x at 26.) The court also agreed with Northwest that Northwest had established its entitlement to payment from Dr. Lovasko of the funds it had advanced to him; these totaled $90,512. (Appellant's App'x at 26.) Accordingly, the trial court found that Northwest was entitled to an offset of $100,512 against the funds Northwest owed to Dr. Lovasko. (Appellant's App'x at 26.) This yielded an aggregate award to Dr. Lovasko of $398,512.

[17]     On March 4, 2016, the trial court entered a supplemental order that awarded Dr. Lovasko prejudgment interest on the judgment. The court calculated the pre-judgment interest owed to Dr. Lovasko on the $398,512 judgment to be $42,026.09, yielding a total award to Dr. Lovasko of $440,538.09. (Appellant's App'x at 19.) The court ordered a five-year payment schedule for Northwest, in conformance with the Severance Agreement's payment provisions, and ordered that Northwest make monthly payments to Dr. Lovasko of $6,641.87. (Appellant's App'x at 18.)

[18]     This appeal ensued.

# Discussion and Decision

## Standard of Review

[19] Northwest appeals the trial court's order determining damages; that order came in response to Dr. Lovasko's motion to correct error. Our standard of review for decisions upon motions to correct error is well settled. We review a trial court's order upon a motion to correct error for an abuse of discretion, which occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or when the court errs on a matter of law. *Corn v. Corn*, 24 N.E.3d 987, 993 (Ind. Ct. App. 2015), *trans. denied*.

[20] Northwest's challenge to the trial court's decision on the motion to correct error followed the court's original entry of judgment along with findings of fact and conclusions thereon. Where, as here, a party has filed a written request for findings and conclusions pursuant to Trial Rule 52, we employ a two-tiered standard of review:

> First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. We neither reweigh the evidence nor assess witness credibility, and we consider only the evidence most favorable to the judgment. We will set aside the trial court's findings and conclusions only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. We review conclusions of law de novo.

*Huber v. Hamilton*, 33 N.E.3d 1116, 1122 (Ind. Ct. App. 2015) (citations omitted), *trans. denied*, 41 N.E.3d 690 (Ind. 2015). A party challenging a trial

court's judgment must bear a heavy burden, but one that may be overcome by showing that the trial court's findings are clearly erroneous. *Oil Supply Co. v. Hires Parts Serv., Inc.*, 726 N.E.2d 246, 248 (Ind. 2000).

## Disability Date

[21] Northwest's first contention on appeal is that the trial court erroneously construed contract provisions relating to the date of Dr. Lovasko's disability. Questions of contract construction are pure questions of law. *Fraternal Order of Police, Evansville Lodge, No. 73, Inc. v. City of Evansville*, 940 N.E.2d 314, 318 (Ind. Ct. App. 2010), *trans. denied*.

> When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. First, we must determine whether the language of the contract is ambiguous. The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract. If, on the other hand, a contract is ambiguous, its meaning must be determined by examining extrinsic evidence and its construction is a matter for the fact finder. When interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was made. We do this by examining the language used in the instrument to express their rights and duties. We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless. We must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict.

*Id.* at 318–19 (quoting *Whitaker v. Brunner*, 814 N.E.2d 288, 293-94 (Ind. Ct. App. 2004), *trans. denied*).

[22] Here, Northwest challenges the trial court's interpretation of specific provisions in the Severance Agreement with Dr. Lovasko, whom all parties agree was permanently disabled and entitled to benefits under the Severance Agreement. The Severance Agreement provides for severance benefits in the event of an employee's death, permanent disability, or voluntary termination of employment with Northwest. In cases of permanent disability, Section 2 of the contract provides:

> **SECTION 2.  Severance Benefit Upon Permanent Disability.**
> In the event of the permanent disability of the Employee, the Corporation shall pay to the employee a Disability Severance Benefit equal to the Severance Benefit payable upon the death of the Employee, <u>reduced however</u>, (but not below zero) by the Disability Income Payments made to the Employee by the Corporation from proceeds paid to the Employee from any disability insurance policies, the premiums of which are paid for by the Corporation.
>
> For purposes of this agreement, the Employee's permanent disability shall mean the Employee's inability to fully perform services for and on behalf of the Corporation in accordance with prior services rendered or as required by any employment contract, and that condition shall continue for a period of one (1) year.

[23] (Appellant's App'x at 44.) The parties agree that Dr. Lovasko received no disability insurance proceeds from any policy held by Northwest.

[24] Section 2's payment calculation relies in part on the provisions of Section 1:

> **SECTION 1.  Severance Benefit Upon Death.**  In the event of the death of the Employee, the Corporation shall pay to the Estate of the Employee, or his designated beneficiary, a Death Severance Benefit equal to eighty percent (80%) of the average of the annual compensation paid an Equal Shareholder Employee for eight (8) quarters preceding the date of death.  For the purposes hereof, an "Equal Shareholder Employee" shall mean an employee who owns at least one hundred (100) shares of the issued and outstanding common capital stock of the Corporation.

(Appellant's App'x at 44.)

[25] Section 4 of the agreement sets forth the schedule for payment of the severance benefit.  The Severance Agreement provides that payment of benefits was to be made "in equal monthly installments over a five (5) year period," and provides for calculation of interest.  (Appellant's App'x at 46.)  The contract further provides, "In the event of the Employee's permanent disability, settlement shall take place within thirty (30) days of the one (1) year anniversary of the inception of the Employee's disability."  (Appellant's App'x at 46.)  In the event of an employee's death or voluntary separation, severance benefits were to be settled within sixty days of the qualifying event.

[26] Northwest acknowledges the interrelation of the provisions above.  However, Northwest argues that the trial court erred in construing Section 2's language defining permanent disability.  The parties agree that Dr. Lovasko became disabled in May 2011.  In light of Dr. Lovasko's disability, the trial court

construed Section 2 of the agreement to require that May 2011 was the beginning of the eight-quarter look-back period set forth in Section 1.

[27] Northwest challenges the trial court's conclusion that the look-back period began in May 2011. Northwest argues that Section 2, properly construed, requires that the look-back period for calculating Dr. Lovasko's severance benefit amount should have commenced in May 2012—one year after Dr. Lovasko became disabled, and not on the date of the onset of the inception of the disability. Northwest's argument here relies on the definition of permanent disability in the Severance Agreement: "permanent disability shall mean the Employee's inability to fully perform services … required by any employment contract, *and that condition shall continue for a period of one (1) year*." (Appellant's App'x at 44.) Northwest insists that "the only possible conclusion" is that Dr. Lovasko became permanently disabled in May 2012 (Appellant's Br. at 35), and thus severance benefits should have been calculated starting from that point.

[28] The Severance Agreement does not directly address the question of when the look-back period commences. However, Section 2 provides for payment of severance in the event of disability in an amount "*equal to* the Severance Benefit payable upon the death of the Employee," even as it also contemplates permanent disability as being defined by the elapsing of a period of time. (Appellant's App'x at 44). The one-year period in Section 2 serves to establish that a disability is, in fact, permanent and thereby gives rise to an obligation on Northwest's part to pay a severance benefit. But the one-year provision does not by its own terms set a look-back date—let alone a look-back date one year

after the beginning of the period of disability—and to conclude otherwise would amount to this Court writing new terms into the agreement, which we cannot do. *See Four Seasons Mfg., Inc. v. 1001 Coliseum*, LLC, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007). We instead interpret the contract as a whole and with an eye toward harmonizing its provisions. *Fraternal Order of Police, Evansville Lodge, No. 73, Inc.*, 940 N.E.2d at 319. When we do so, we conclude that the Severance Agreement contemplated a look-back date based solely upon the date of the inception of disability.[3]

[29] Because we conclude that the one-year look-back period commenced with the inception of Dr. Lovasko's disability, we find no error in the trial court's construction of the Severance Agreement in this regard.

## Calculation of Severance Benefit Amount

[30] In addition to challenging the trial court's determination on the look-back date, Northwest argues that the trial court erred in its construction of Section 1's provision governing calculation of the total severance benefit. Under the Severance Agreement, "the Corporation shall pay to the Estate of the employee" a severance benefit amount "equal to eighty percent (80%) of the average of the annual compensation paid to an Equal Shareholder Employee

---

[3] Northwest argues in its reply brief that Dr. Lovasko's interpretation of the Severance Agreement suggests that Section 2 is ambiguous and requires looking to evidence extrinsic to the contract. Because we reach our conclusion solely through interpretation of the language of the Severance Agreement, we do not reach the questions of ambiguity and extrinsic evidence, particularly extrinsic evidence related to negotiations that took place several years *after* the Severance Agreement was negotiated.

for the eight (8) quarters preceding the date of death [or other qualifying event]." (Appellant's App'x at 44.)

[31] Looking to this language, the trial court construed the Severance Agreement to require that the 80% figure be determined by averaging the annual compensation available to all three Equal Shareholder Employees for the eight quarters prior to Dr. Lovasko's disability. For purposes of construction of the agreement, the trial court identified the aggregate of the annual compensation paid under the agreement as the Net Income Available to Physicians figures ("Net Income Available") set out in Northwest's Income & Expense Allocation reports. Taking the average of the Net Income Available over eight quarters and the three Equal Shareholder Employees (Drs. Lovasko, Wolf, and Mekhail), the trial court arrived at an average compensation figure of $152,690. After reducing that amount to 80% of its value as provided under the Severance Agreement, the court found that the severance benefit was $122,152. In his motion to correct error, Dr. Lovasko noted that the $122,152 was a quarterly average, and requested that the trial court annualize that figure. The court agreed with Dr. Lovasko, and, quadrupling the quarterly amount, determined that Dr. Lovasko's total severance benefit under the Severance Agreement was $488,608. The trial court then ordered that amount offset by the amount it found Dr. Lovasko owed to Northwest as a result of the unpaid loan and accounting deficit allocated to him under Northwest's Income & Expense Allocation reports.

[32] Northwest contends that this result was in error. It argues that the correct severance benefit for Dr. Lovasko was $75,000, which, taken with the trial court's finding that Dr. Lovasko owed Northwest more than $100,000, would likely result in a net judgment in favor of Northwest. Northwest rests its argument on several presumptions. Throughout its argument, Northwest assumes that the look-back period for Dr. Lovasko's disability severance benefit began in 2012. Further, Northwest contends that the trial court was required to consider *only* Dr. Lovasko's compensation when it calculated the severance benefit, and that the court misconstrued the agreement when it used the average for all three dentists of the Net Income Available figure from Northwest's Income & Expense Allocation statements.

[33] We have already held that Northwest's preferred look-back period is not the one required under the terms of the Severance Agreement. To the extent Northwest's argument assumes the correctness of its preferred position despite any possibility to the contrary, Northwest's argument that the trial court erred in calculating Dr. Lovasko's severance benefit fails.

[34] We turn now to Northwest's argument that the trial court erred when it took into account all three Equal Shareholder Employees' compensations, rather than limiting the calculation solely to Dr. Lovasko's actual compensation. The Severance Agreement states that the severance benefit is to be calculated based upon "the annual compensation paid to *an Equal Shareholder Employee*." (Appellant's App'x at 44, emphasis added.) The agreement defines Equal Shareholder Employee to mean "an employee who owns at least one hundred

(100) shares" of issued and outstanding common stock in Northwest. (Appellant's App'x at 44.) As a stand-alone term, the Severance Agreement defined "Employee" to mean only Dr. Lovasko. (Appellant's App'x at 44.) The provision governing calculation of the severance benefit does not state that the calculation is to be based upon the compensation of only "the Employee," but rather the compensation paid to *an* Equal Shareholder Employee. Moreover, the agreement uses "the Employee" at other points in Section 1, and indeed throughout the agreement.

[35] Thus, the language of the agreement indicates that the parties intended that the compensation made available to other employees of Northwest was to be taken into account in determining any one employee's severance benefit. Had the parties intended to use *only* the departing employee's compensation as the basis for the severance benefit, the agreement as drafted shows they could easily have done so; they did not. Accordingly, we find no error in the trial court's decision to base its calculation on an average of the compensation paid to all the Equal Shareholder Employees in this case.

[36] Moreover, as we noted above, Northwest's argument throughout its challenge to the trial court's calculation of the severance benefit depends upon Northwest's assumptions regarding the look-back period and its argument that the court should have taken into account *only* Dr. Lovasko's compensation. Northwest's argument on appeal—namely, the very specific figure it argues the trial court should have reached—falls with the failure of those two assumptions. This Court has rejected both of Northwest's assumptions, and Northwest's

argument on appeal thus fails.  As a result, we do not consider the remainder of Northwest's argument concerning the trial court's interpretation of the financial information presented at trial.  And because we will not "sift through a record to locate error," *Wright v. Elston*, 701 N.E.2d 1227, 1230 (Ind. Ct. App. 1998), *trans. denied*, we conclude that Northwest has failed to establish reversible error on the part of the trial court.

# Conclusion

[37] The trial court did not err in its construction of the look-back provision in the Severance Agreement.  The trial court did not err when it reached a severance benefit amount other than that proffered by Northwest.

[38] Affirmed.

Riley, J., and Barnes, J., concur.