Lucile FORD, Appellant–Respondent,

v.

PEOPLES TRUST AND SAVINGS
BANK, and Mary J. Derr,
Appellees–Petitioners.

No. 87A01–9412–CV–411.

Court of Appeals of Indiana.

June 27, 1995.

Transfer Denied Nov. 8, 1995.

Gregory G. Meyer, Ziemer, Stayman, Weitzel & Shoulders, Evansville, for appellant.

Lawrence L. Grimes, Bowers, Harrison, Kent & Miller, Evansville, Mark H. Hendrickson, Boonville, for appellees.

## OPINION

BAKER, Judge.

Appellant-respondent Lucile Ford claims that the trial court's awards of personal representative and attorney fees are unreasonable.

### BACKGROUND

On July 28, 1994, appellees-petitioners Peoples Trust and Savings Bank and Mary J. Derr, as co-personal representatives of the estate of Katie K. Barker, filed a petition requesting that the trial court determine co-personal representative fees and attorney fees. On August 17, 1994, Ford, a devisee of the decedent, filed an objection to this petition. After a hearing, the trial court awarded fees in the amount of $32,000.00 to Derr, $64,000.00 to the Bank, and $96,000.00 to attorney Mark Hendrickson.[1] At the time of her death, Barker's gross estate totaled $2,383,514.97. Prior to her death, the Bank was appointed as her guardian and liquidated her assets so that her estate consisted primarily of stocks, bonds, and certificates of deposit.

### DISCUSSION AND DECISION

 IND.CODE § 29-1-10-13 provides that where a testator does not provide for the compensation of the personal representative and the attorney performing services for the estate, the trial court is authorized to award reasonable fees. The amount of fees to be awarded is within the trial court's discretion and will not be disturbed absent an abuse of discretion. *Matter of Estate of Meguschar* (1987), Ind.App., 511 N.E.2d 307, 310, *trans. denied.* Moreover, we have recognized the trial court's particular expertise in determining the value of the services rendered. *Id.*

 In determining a reasonable amount of fees, the trial court may consider many factors, including the labor performed, the nature of the estate, difficulties in recovering assets or locating devisees, and the peculiar qualifications of the administrator. *Id.* at 310-11. In addition, the trial court may consider the following guidelines for determining legal fees set out in Ind.Professional Conduct Rule 1.5:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

 In the present case, the parties did not request findings of fact. However, the trial court made findings of fact in its order awarding personal representative and attorney fees. Where the trial court has entered findings on its own motion, the general judgment controls as to issues upon which the court has not made findings and the specific findings control only as to the issues they cover. *Bratton v. Yerga* (1992), Ind.App., 588 N.E.2d 550, 554. Thus, the specific findings will not be set aside unless they are clearly erroneous and we will affirm the general judgment on any legal theory supported by the evidence. *Id.*

 In its order, the trial court specifically found that after considering all of the factors set out in Rule 1.5, the fees requested by the co-personal representatives were reasonable. Thus, in reviewing the court's find-

---

1. We note that Hendrickson is also the president of the Bank and maintains his law office at the Bank.

ing, we will address each of the enumerated factors under the Rule.[2]

First, as to the time spent and the labor performed by the parties, the trust officer representing the Bank testified that the total time required for the Bank to administer the estate would be approximately 114 hours. Further, Hendrickson testified that the total time required for him to complete the estate would be approximately 114.75 hours. Derr testified that she could not estimate the amount of time she spent on the estate, except that it was less than 43 hours.[3] We note that the Bank's award of $64,000 for 114 hours of work is equivalent to an hourly rate of $561.40, Hendrickson's award of $96,000 for 114.75 hours is equivalent to an hourly rate of $836.60, and Derr's award of $32,000 for 43 hours of work is equivalent to an hourly rate of $744.18. Although the trial court must consider all factors relating to the reasonableness of a requested fee, the key is that the fees be "reasonably commensurate to the time and work involved." *Meguschar*, 511 N.E.2d at 311. We will not require that fees conform to an hourly rate, but we observe that the equivalent hourly rates here appear to be unreasonable.

In regard to the difficulty of the questions involved and the skill required, Hendrickson argues that the assets of the estate consisted primarily of stocks and bonds, which was unusual for Warrick County. However, we note that an accountant was employed to prepare the estate tax return and two stock brokerage firms were employed to sell the investments. Moreover, the co-personal rep-

resentatives' own witness, who was an attorney in Warrick County, testified that the administration of the estate was "pretty much routine." R. at 198.

As to the second guideline, regarding whether the acceptance of this case precluded other employment, Hendrickson argues that after taking this case in July 1992, he had to decline numerous other cases. This factor is not very persuasive, however, in light of the minimal amount of time that the administration of this estate required over the course of two years.

Third, as to the fee customarily charged in the locality for similar legal services, the Bank and Derr offered the testimony of two attorneys, each with significant experience in estate practice in Warrick County, who opined that the fees charged in this case were reasonable. The testimony of other lawyers is an appropriate factor for the trial court to consider in determining attorney fees. *Id.* at 311.

■ Fourth, as to the amount involved, the trial court found that the estate was worth $2,383,464.00. This finding is supported by the evidence. The size of an estate is a proper consideration in determining the amount of fees.[4] *Id.* However, a reasonable fee cannot be determined solely by the application of a percentage formula to the value of the gross estate.[5] *Id.*

Regarding the results obtained by Derr, the Bank, and Hendrickson, the trial court found that there were no criticisms of the administration of the estate and that there

---

**2.** We will not address the eighth factor because the personal representative and attorney fees were neither fixed nor contingent.

**3.** When asked to estimate how much less than 43 hours she spent administering the estate, Derr stated that she had no idea.

**4.** We note that some courts provide by rule that fees will be approved up to a certain maximum percentage of the estate. Such rules often provide for a declining percentage as the size of the estate increases. For example, the Rules of the Monroe Circuit Court, Appendix E, Attorney Fee Schedule I(C) provide:

C. MAXIMUM FEES FOR ADMINISTERING THE GROSS ESTATE may be approved by the Court as follows:

Up to $100,000.00 of the Gross Estate Value, SIX PERCENT of that value.
Next $200,000.00 of the Gross Estate Value, FOUR PERCENT.
Next $700,000.00 of the gross Estate Value, THREE PERCENT.
Excess of the Gross Estate Value over $1,000,-000.00, ONE PERCENT.

**5.** Although Ford contends that the trial court arrived at its determination solely by multiplying the size of the estate by eight percent, the record does not reveal that the trial court employed any specific percentage formula. Curiously, however, we note that eight percent of $2.4 million equals $192,000, which is the total amount of fees awarded by the trial court.

were no unnecessary delays. It further found that the representatives and the attorney obtained favorable results for the estate and that the estate had been administered in a professional and efficient manner. The record reveals that these findings are supported by the evidence.

Fifth, regarding time limitations, the Bank and Derr contend that there were time pressures imposed upon them and Hendrickson in that the federal estate and Indiana tax returns had to be completed within nine months of Barker's death and that one of the devisees made a request for partial early distributions. However, the record does not reveal that these time pressures were either unusual or demanded many hours of work over a short period of time.

Sixth, as to the nature and length of the relationship with the client, the trial court found that both the Bank and Hendrickson had a longstanding business relationship with Barker and that Derr was a close personal friend of Barker. Although this finding is supported by the evidence, the record also reveals that the Bank and Hendrickson were paid for their prior services and that Derr is a twenty-percent residuary beneficiary of the estate. *See Matter of Smith* (1991), Ind., 572 N.E.2d 1280, 1289. Thus, the fees requested by the parties did not include unpaid fees for their prior work.

Seventh, regarding the experience, reputation, and ability of the lawyer, the trial court found that Hendrickson had substantial experience in the administration of estates and had a reputation in the community for providing competent and skillful representation. Similarly, the court found that the Bank had abundant experience and a reputation of competence as a fiduciary for decedents' estates. These findings are supported by the evidence. However, there is no evidence that either the Bank or Hendrickson had such unique experience or skills which would justify such extraordinary fees as were awarded. *See id.*

In light of the evidence before the trial court and the Rule 1.5 factors, we hold that the trial court's finding that the award was reasonable is clearly erroneous. Despite the size of the estate and the undisputed experience and competence of both Hendrickson

and the Bank, we find that the fees awarded here were nevertheless unreasonable. *See id.* (attorney fees of $200,000 and executor's fees of $100,000 were unreasonable where the gross estate totaled nearly $5,000,000.) The record reveals that the time spent in administering the estate was minimal in relation to the amount of fees awarded and resulted in outrageous hourly fees, ranging from $561.40 to $836.60 per hour. The record further reveals that, although the Bank and Hendrickson were experienced and skilled, neither had such unique skills that would warrant such extraordinary fees. In addition, the parties' relationships with the decedent do not justify the extraordinarily high fees because the Bank and Hendrickson were compensated for their past services and Derr was already being provided for as a twenty-percent residuary beneficiary.

Further, though the assets of the estate were extensive, they were relatively simple to administer. Moreover, the record reveals that the administration of the estate did not impose any unusually strict time limitations nor did it require so much time that it substantially precluded either the Bank or Hendrickson from other employment.

■ In conclusion, the trial court must consider all factors relating to reasonableness, but the key is that the fees be reasonably commensurate to the amount of time and work involved in the administration of the estate. *Meguschar,* 511 N.E.2d at 311. As stated above, we will not require that fees conform to an hourly rate. However, we find that the extraordinary amount of fees awarded here does not bear a reasonable relation to the amount of services actually provided and the reasonable value of those services. Thus, we remand to the trial court with instructions to reconsider the evidence and determine an appropriate amount of both attorney fees and co-personal representative fees.

Judgment reversed and remanded for proceedings not inconsistent with this opinion.

NAJAM and STATON, JJ., concur.