**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Dec 31 2012, 11:22 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**ERIC N. ALLEN**
**MICHAEL C. COOLEY**
Allen Wellman McNew, LLP
Greenfield, Indiana

ATTORNEYS FOR APPELLEES:

**TAMATHA A. STEVENS**
**JENNIFER J. WALLANDER**
Stevens and Associates, PC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| KIMBERLY A. HARRISON and CHRISTINE G. PORTELL, <br><br> Appellants, <br><br> vs. <br><br> YALE RICE III, as TRUSTEE OF THE YALE RICE, JR. LIVING TRUST; THE YALE RICE, JR. IRREVOCABLE TRUST, AND THE MILDRED I. RICE LIVING TRUST OR THE MILDRED I. RICE MARITAL TRUST AND THE MILDRED I. RICE FAMILY TRUST, <br><br> Appellees. | No. 06A01-1203-TR-126 |

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Matthew C. Kincaid, Judge
Cause No. 06D01-1009-TR-2

**December 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Yale Rice, III ("Rice") is the sole trustee of the Yale Rice, Jr. Living Trust, the Yale Rice, Jr. Irrevocable Trust, and the Mildred I. Rice Living Trust, which have been merged into a single trust known as the Rice Family Trusts ("the Trusts"). Kimberly Harrison and Christine Portell (collectively "the Objecting Beneficiaries") filed a Petition to Require the Trustee to File an Accounting and Complaint for Breach of Fiduciary Duty against Rice.[1] Following a hearing, the trial court approved the final accounting filed by Rice and found no breach of fiduciary duty. The Objecting Beneficiaries appeal and raise the following issues for our review:

1.   Whether the trial court erred when it approved the final accounting for the Trusts.

2.   Whether the trial court erred when it found that Rice had not breached his fiduciary duty to the Objecting Beneficiaries.

3.   Whether the trial court abused its discretion when it approved the trustee fees, personal representative fees, and attorney's fees.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

Yale Rice, Jr. ("Yale") and Mildred Rice ("Mildred") were married and had three children together. In February 1993, Yale and Mildred each created a living trust, and each was the grantor, initial trustee, and initial beneficiary of the respective trusts. The three children, Rice, Harrison, and Portell, were each beneficiaries of a one-third interest in the residuary of the trusts. And in 2000, Yale created the Yale Rice, Jr. Irrevocable Trust Agreement, with each of the children being a beneficiary of a one-third interest in

---

[1]   A third plaintiff is named on the petition and complaint, but that plaintiff has since been dismissed as a party.

2

the trust. After Mildred's death in 2005, Yale and Rice began serving as co-trustees of her trust, which converted to a credit shelter trust upon her death. And after Yale's death on January 24, 2010, Rice became sole trustee of all of the Rice Family Trusts.

Upon Yale's death, the following partial distributions to beneficiaries were made: $106,841.15 to Portell (debt forgiveness); distributions of personal property to Rice, Harrison, and Portell in the amounts of $1112, $3024, and $4,649.50, respectively; $45,000 cash to Rice; $138,500 to Harrison (value of house transferred to Harrison); payments to grandchildren for educational expenses totaling $69,500; and $231,911.67 in cash each to Rice, Harrison, and Portell. When Rice explained to Portell that he was advised to wait until the Fall of 2010 to make full distribution of the Trusts' assets in order to first ascertain the tax liability, Portell was not satisfied.

On September 8, 2010, Harrison and Portell filed their Petition to Docket Trusts, Petition to Remove Trustee, Petition to Require the Trustee to File an Accounting, and Complaint for Breach of Fiduciary Duty. Following a hearing on October 15, the trial court appointed JPMorgan Chase Bank ("Chase") as successor trustee of the Trusts and ordered Rice to relinquish all authority to Chase. But Chase declined its appointment as successor trustee, and Rice resumed his role as trustee of the Trusts.

On June 9, 2011, Rice filed provisional accountings for each of the Trusts. The Objecting Beneficiaries filed objections to those provisional accountings. And on November 9, 2011, Rice filed verified Final Accountings for each of the Trusts. The Objecting Beneficiaries then filed their objections to the Final Accountings. Rice filed his responses to the objections, as well as petitions for approval of trustee fees and

attorney's fees. The Objecting Beneficiaries filed their objections to Rice's petitions for trustee and attorney's fees.

Following a two-day hearing on the Objecting Beneficiaries petitions and complaint, the trial court entered the following findings and conclusions:[2]

1. The above matter began on August 3, 2010, when counsel for Plaintiffs contacted counsel for Defendant via letter . . . informing Defendant of his representation of the beneficiaries in this matter, and requesting an accounting of the trusts.

2. Per I.C. 30-5-6-4(c), and as delineated in the letter, Defendant had a period of sixty (60) days from the date of the request (August 5, 2010) to prepare the accountings, making them due on or about October 3, 2010.

3. Instead, on or about August 8, 2010, the Plaintiffs filed a complaint against the Defendant in Hamilton County, Indiana, which was approximately five (5) days after the date of the above-referenced letter requesting accountings of the trusts.

4. Per Indiana Code 30-4-6-3(b), the complaint referenced in Paragraph 2 should have been filed in Boone County, Indiana.

5. Nevertheless, Defendant's counsel was required to prepare for, attend, and make the proper motion to change venue, which was granted.

6. This Court has heard argument on the removal of the Defendant as Trustee, at which time Defendant challenged the removal, objected to the proposed appointment of either of Plaintiffs and proposed JPMorgan Chase Bank, NA, the primary bank currently holding trust funds, as trustee. JPMorgan then declined the appointment, and Defendant continued to serve as Trustee.

7. On or about November 9, 2011, Defendant filed a Final Accounting for each of the above trusts, along with an accounting for the all the trusts as collapsed upon the death of Yale Rice, Jr. on January 24, 2010.

8. Plaintiffs objected to the consolidating of the three trusts after the death of Yale Rice, Jr., despite specific merger provisions contained in all three trusts and the fact that the three trusts were effectively collapsed and distributions from the point of Yale Rice, Jr.'s death forward were not substantially equal from any one trust.

9. The trust terms as well as the Indiana Code permitted the collapse; the trust terms did not require any notice to or consent of the beneficiaries for merger.

---

[2] The Objecting Beneficiaries point out that the trial court adopted Rice's proposed findings of fact and conclusions verbatim. While this court has generally discouraged this practice, see Carpenter v. Carpenter, 891 N.E.2d 587, 592 (Ind. Ct. App. 2008), here, the evidence adequately supports the findings and the findings support the conclusions.

10.     Plaintiffs also objected, in four (4) separate pleadings, to all of the Final Accountings filed in this matter.   Objections include items as inconsequential as a $6.00 check to Office Max, a $20.00 check to Marsh, a $300 check payable to the Defendant (who paid a regular and well-known health expenses for Yale Rice, Jr. and received reimbursement), a $175 water bill reimbursement for Plaintiff Kimberly Harrison (from an account in her husband's name at her own residence), to expenses previously consented at the time of payment in writing by one or both of the Plaintiffs.

11.     Plaintiffs objected in open court to the valuation of and alleged ownership of personal property, namely a dresser, a bed, and a bone carving set.

12.     Plaintiffs testified that these items had in fact been under Mildred Rice and/or Yale Rice, Jr.'s possession and control for at least a decade, and to which the Plaintiffs themselves had previously assigned a value.

13.     Plaintiffs further objected to the Defendant's valuation of Plaintiff Christine Portell's promissory note held by the Yale Rice Jr. Living Trust, which has been made a part of the Court's record in this matter.

14.     The current principal amount of Christine Portell's promissory note was agreed to at the final hearing; however, the note provides for regularly-accruing penalties of 5% of each monthly installment that is late by fifteen (15) or more days and interest at 5.82% per annum, which, when calculated for the life of the loan and added to principal, equals the amount of $106,841.15.

15.     Defendant drafted formal Responses on or about December 22, 2011[,] to each of the Plaintiffs' objections to the Final Accountings, attaching, in most cases, Plaintiffs' own written documentation as exhibits, all of which had been previously provided to Plaintiffs through discovery.

16.     Plaintiffs then furnished their responses to Defendant's interrogatories on or about January 6, 2012, wherein they specifically affirmed all of their objections, despite having been served with the Defendant's responses to their objections to the Final Accountings on December 22, 2011.

17.     Approximately one-half hour before the conclusion of the two-day hearing held on January 12-13, 2012, Plaintiffs withdrew the majority of these objections via a typewritten letter.  This same letter was not provided to Defendant's counsel in discovery or prior to the hearing or at any other stage of this litigation.

18.     Because of the above convoluted course of events, an excess of Defendant['s] and Defendant['s] attorney['s] time was spent establishing the proper venue for the matter[] and addressing, on multiple occasions, what turned out to be wholly unnecessary objections.

19.     Lastly, Plaintiffs objected to the amount of Defendant's attorney fees and Trustee fees paid in this matter, stating as to the Trustee fees, "the fees are excessive, unreasonable, and grossly exceed the amount of work Rice

has performed as Trustee," and stating as to the attorney fees, "the fees are excessive, unreasonable, and grossly exceed the value of any services Stevens and Associates [PC] has provided to the Trust."

20. Per I.C. 30-4-3-3, Defendant was specifically permitted to hire an attorney and it was within his sole discretion to set the compensation terms for the representation.

21. The Defendant hired STEVENS & ASSOCIATES, PC, and set the terms under which the Trustee's counsel was to be compensated.

22. Defendant's counsel has listed in numerous pleadings the services they [sic] performed and still are performing as legal counsel for the Trusts, including the above-referenced matters, facilitating appraisal and distribution of personal property between three (3) disagreeing beneficiaries, preparing the Final Accountings for life of the trusts, compiling and reviewing approximately 3,700 pages of documents to comply with discovery, hiring of and coordination with an expert witness, attendance at a deposition, three (3) hearings, drafting of the instant pleading on the Plaintiffs' motion, and will still need to facilitate completion of 2011 and 2012 income taxes and final distributions for the trusts.

23. Defendant's counsel also responded to three (3) cycles of discovery served by Plaintiffs, much of which involved bank statements from Ameriprise and JPMorgan Chase Bank, NA, despite the Plaintiffs having access to same via internet banking since at least July 2008 per the Rice Intra-Family Agreement.

24. Plaintiffs did not request any specific detail with regard to the attorney fees of STEVENS & ASSOCIATES, PC's time spent, hourly rates, hours kept, or the exact nature of the representation but yet allege, without any supporting documentation, that it is "duplicative" of unspecified services provided by attorney Brian Gordon.

25. The non-specificity of Plaintiffs' objections to attorney fees led Defendant's expert witness to testify: "The objectors have not focused the court or the parties' attention on any specific hourly rate, any wasteful time, or any line item on an invoice."

26. Plaintiffs' expert witness testified as to the reasonable and customary hourly rates for representing trustees in a typical case, which this case is not, and without having reviewed any of the 3,700-plus pages of documents that supported all of the time and effort spent on these trusts.

27. As to disclosure, Defendant['s] counsel has furnished an itemized and comprehensive billing statement to the parties, has disclosed fees on Yale Rice, Jr.'s IH-6 and through the discovery process, and also has testified as to the appropriateness of the fees at the final hearing in this matter.

28. STEVENS & ASSOCIATES, PC is entitled to payment of fees as determined and agreed to by Defendant, and as presented before this Court

6

for approval in their Petition for Approval of Fees to STEVENS & ASSOCIATES, PC, filed on or about December 22, 2011.

29. Defendant has served as trustee of the Yale Rice, Jr. Living Trust since February 9, 2006, as trustee of the Mildred I. Rice Family Trust since May 24, 2005, and as Trustee of the Yale Rice, Jr. Irrevocable Trust since July 27, 2000.

30. It is undisputed that Defendant was added to the bank accounts as trustee for the Yale Rice Living Trust on February 9, 2006, and also that the Rice Intra-Family Agreement, signed in July 2008, states in paragraph 4 that Defendant "is currently operating as [Trustee]."

31. It is undisputed in this matter that the terms of all of the trusts contained unequivocal provisions for compensation "equal to the customary and prevailing charges" or "in accordance with an established schedule of fees."

32. Plaintiffs asserted at the final hearing that they believe that an individual trustee should be paid less than an institutional trustee; however, Plaintiffs' expert witness admitted that there were no fee schedules in existence for an individual trustee. In contrast, the Defendant's expert witness testified that the language in the documents could only have referred to trustee fees as customarily charged by a bank or trust company, and that the trustee fees in this case were reasonable.

33. Defendant's expert witness also testified that Courts strive to give effect to the settlor's intent. In this case it is not disputed that Yale Rice, Jr. approved of an annual 1.5% trustee fee as reasonable, and the Defendant has requested an amount less than this.

34. Terrence Yatsak, Yale Rice Jr.'s financial advisor and friend, testified that he assisted Yale Rice, Jr. and Mildred Rice in estate planning, was present at the estate planning meetings, and, upon Yale Rice. Jr.'s request, reported that a 1.5% trustee fee was customary.

35. Yatsak further testified that Yale Rice, Jr. was specifically aware of and intentional about the inclusion of the trustee fee provisions included in his and Mildred Rice's trust documents.

36. At no time during the past eighteen (18) months of litigation did Plaintiffs (or Plaintiffs' expert witness) suggest a proper fee amount for the Trustee for any of the trusts or collectively for all the trusts.

37. During his tenure as Trustee of the Trusts, the Defendant has assumed and performed all trustee duties, including analyzing and purchasing productive quality investments, preservation of tax-exemption through use of annual Crummey letters, collecting and preserving assets and income, and paying valid expenses and taxes. Defendant has also acted to make appropriate distributions as provided in the Trusts.

38. Defendant has also expended considerable hours assisting counsel with Final Accountings comprising the entire duration of his tenure as Trustee (despite the Plaintiffs' access to bank statements via internet

7

banking showing income and expenses), being the subject of a deposition, and attending court, since this litigation commenced on August 8, 2010.

39. As to the Yale Rice, Jr. Irrevocable Trust, Defendant ensured a return of $750,000.00 on $280,000.00 over ten (10) years (an approximate 20% return) on its investments, an impressive figure given the poor economy and volatility of the stock market during these years. As to the Living trusts of Yale Rice, Jr. and Mildred Rice, Defendant was able to boast an annual return of between 5-7% on their investments while he served as Trustee.

40. It is important to note that one of the purposes of trustee fees is to compensate the trustee for the liability that they assume in their role, especially when beneficiaries are in conflict with each other; had the above trusts had poor returns on their investments or suffered significant losses as typical of the market over this period of time, it is probable that the parties would be in the same situation we are now, with the Plaintiffs attempting a claim against the trustee due to losses incurred by the trust(s).

41. During the eleven and one-half (11 1/2), six and one-half (6 1/2), and five (5) years that the Defendant served as Trustee, not one of the trusts which are the subject of this matter [was] ever sued, became defunct, suffered a loss, or [was] assessed fines or penalties.

42. After the commencement of this litigation, Plaintiffs also objected to personal representative fees paid to the Defendant, on the basis that an actual probate estate was never opened for Yale Rice, Jr.

43. The personal representative fees were disclosed on Yale Rice, Jr.'s IH-6, filed on or about October 22, 2010. At no time did any beneficiary object to the IH-6, and at no time did any beneficiary file [his or her] own IH-6, and a closing letter was then properly issued by the Indiana Department of Revenue.

44. That Defendant performed numerous personal representative duties after the death of Yale Rice, Jr., including:

a) Assist Defendant's counsel in the preparation of the inheritance tax return (IH-6);

b) Arrange payment for funeral services, headstone, and burial;

c) Collect all monies owed to the decedent, including the last pension payment, rent deposit return, and utility deposit return;

d) Notify all interested parties of decedent's death;

e) Facilitate completion of decedent's personal income tax returns;

f) Secure, pack, and terminate liability of decedent's apartment; and

g) Spread the will of record in Marion County Probate Court (county of decedent's residence and county of death) within the proper time allotted by statute to spread wills.

45. The fact that the Defendant performed all of the above duties is not disputed in the record.

46. The Plaintiffs themselves acknowledge Defendant in the role of personal representative in Paragraph 11 of Plaintiffs' Amended Complaint, wherein they state that Defendant is serving not only as Trustee, but also as Personal Representative of the Estate of Yale Rice, Jr.; therefore, this should be a non-issue.

47. Plaintiffs' counsel testified as to his attorney fees near the conclusion of the final hearing, and was questioned by an associate, Jay F. Brubaker, who never filed an appearance in this matter in violation of Rule 3.1 (A) of the Indiana Rules of Trial Procedure.

48. Plaintiffs' counsel claims to have requested payment of his fees from this Court without ever filing a Plaintiffs' Petition for Attorney Fees.

49. There is no basis, statutory or otherwise, for this Court to award Plaintiffs any attorney fees, especially in light of the excessive fees incurred by both parties due to his errors and baseless objections in this matter.

50. While testifying, Plaintiffs' counsel presented a spreadsheet detailing fees and write-offs due to his errors during the course of this litigation, which was not received by Defendant's counsel until the end of the final hearing, despite repeated requests via email to provide same prior to the hearing.

51. Plaintiffs' counsel did not testify that he would write off any Defendant's counsel's fees expended in responding to his errors leading to his own write-offs.

52. At this point, after three hearings, a deposition, and three cycles of discovery resulting in over 3,700 pages of discovery, over more than eighteen months (18) of litigation, no breach of fiduciary duty by the Defendant has yet been properly alleged or adjudicated by this or any other court.

53. Defendant did not breach his fiduciary duty to claim trustee fees that were specifically allowed in each of the trusts at issue.

54. Defendant did not breach his fiduciary duty in exercising his right to claim personal representative fees.

55. The Defendant did not breach his fiduciary duty in paying expenses proper to the trusts or as agreed upon by the beneficiaries, by distributing Kimberly Harrison's residence to her, the debt comprising both principal, nominal interest, and penalties that Christine Portell held with the Yale Rice Jr. Living Trust to her, and making a distribution to himself of $45,000.00, which is less than half of the value of the above distributions made to either of the Plaintiffs.

9

56.     The Defendant did not breach his fiduciary duty in hiring assistance in cleaning Yale Rice, Jr.'s apartment after his death, hiring professionals to perform accounting, investment, and legal matters, and then compensating those people for their service.

57.     Defendant has at all times acted as Trustee in good faith, and Plaintiffs have made no showing otherwise in this or any other court.

58.     In conclusion. Plaintiffs have had ample opportunity to express their grievances over the years, the basic substance of which is that their non-monetary distributions have been properly allocated against their trust shares, and that the Defendant is properly entitled to a trustee fee, resulting in more money going to Defendant than to Plaintiffs.

## II. CONCLUSIONS OF LAW

### A.     Trustee Compensation

The three trusts included specific language regarding awarding and calculating trustee compensation.  Had the trusts been silent on the matter, Indiana Code 30-4-5-16 also provides for "reasonable compensation." Trustee compensation is even permitted if there is an adjudication of breach of fiduciary duty per I.C. 30-4-5-17.  When determining whether fees are appropriate when there has been a breach of fiduciary duty, the court must look to the following factors:

IC 30-4-5-17(b):

(b) In the exercise of its discretion under subsection (a) of this section, the court may consider, among others, the following facts:

>       (1)     whether the breach of trust was intentional, negligent, or without fault;
>       (2)     whether or not the trustee acted in good faith;
>       (3)     whether or not the breach of trust resulted in a loss to the trust estate;
>       (4)     if a loss results, whether the trustee has indemnified the trust estate; and
>       (5)     whether the trustee's services were of value to the trust estate.

After three hearings, a deposition, and three cycles of discovery over more than eighteen months (18) of litigation, no breach of fiduciary duty has been established. There has been no allegation or showing of bad faith on the part of the Defendant; on the contrary, he waited to compensate himself until the income beneficiary, Yale Rice, Jr., passed away so that the income beneficiary could enjoy more money during his lifetime, and so that

the assets could keep appreciating for the remainder beneficiaries. A bank or corporate fiduciary would not have done the same. As a result, the Irrevocable Trust had an annual return on investment of approximately 20%, and the annuities contained in the Living Trust and Family Trust had an annual return of 57%. There has been no demonstration of any financial loss by any Trust in the record. Based on the foregoing, the Defendant's services were undoubtedly of value to the trust estates. As noted in the Petition for Fees to Trustee, the total fee amount to be paid to the Defendant for his trustee and personal representative fees, including the year of death fees, equals $248,724.00. This fee is directly in accordance with the fees charged under the fee schedules from National Bank of Indianapolis, First Merchants Trust Company, and Salin Bank. The payment of personal representative fees was made in good faith, disclosed on the IH-6 tax return, and was made in accordance with the indemnification provisions of the trusts. Based on these factors, Plaintiffs have not established any breach of fiduciary duty, and the Defendant is entitled to compensation.

The Final Accountings sufficiently fulfill the requirements of I.C. 30-4-5-13. They contain the period covered by the accounting, the total principal of the trust, an itemized schedule of principal and income received and disbursed/distributed, the balance of the trust at the end of the accounting period, a statement that the trust has been administered according to its terms, and the names and addresses of the Trustee and beneficiaries. As contained in the record, pending trustee and attorney fees were not included pending approval of the corresponding fee petitions by this Court, as clearly noted in the Final Accountings and with full disclosure of fees paid to date to Plaintiffs through prior pleadings and discovery. I.C. 30-4-5-14(c) requires any objections to the trust accountings to be specific. None of Plaintiffs' objections were specific. Regardless, most of the objections to the Final Accountings were withdrawn by Plaintiffs' counsel at the end of the final hearing; the remainder of their objections are addressed herein and are not proper objections to be raised to a final accounting.

## B.     Attorney Fees

The trusts specifically authorize the Defendant to hire and set compensation for attorneys. Had the trusts been silent, there are multiple Indiana Code sections which permit an attorney to charge a reasonable fee for representation of a Trustee in the administration of a trust [I.C. 30-4-3-3(a)(10) and 30-4-3-3(a)(16)]. However, the "reasonableness" standard for any attorney fee is governed by Indiana Rule of Professional Conduct 1.5, which sets forth several factors in determining whether the fees charged are

reasonable. The Defendant's expert witness report has addressed these in detail, and Defendant asserts that the fee charged in this case is reasonable. Counsel for the Defendant has documented all time spent in this case, charges a reasonable and consistent hourly rate, has represented the Defendant for an extended period of time, entered into representation in writing with the client, and has provided billing records and invoices to Defendant and Plaintiffs multiple times, as well as on Yale Rice Jr.'s IH-6. It also must be emphasized in this case, as noted above, that this is not a typical, usual, and customary trust case; it involves multiple beneficiaries in conflict, errors by Plaintiffs' counsel, multiple discovery requests, and complex litigation, which continues to be ongoing. Based on the foregoing, the attorney fees contained in the Defendant Petition for Approval of Attorney Fees in this case are reasonable.

## C. Personal Representative Fees

Fiduciaries such as the Defendant in this matter have the responsibility and authority given to a personal representative under I.C. 29-1-7.5-3, whether or not a formal probate estate has been opened. Defendant was named as personal representative in Yale Rice, Jr.'s Last Will and Testament, and was acknowledged as such in Plaintiffs' Amended Complaint. It is customary in the state of Indiana to perform duties of a personal representative on behalf of the decedent without opening a formal probate estate, as an estate opening is not even required unless the decedent's probable property totals in excess of $50,000.00. These fees were properly disclosed on Yale Rice, Jr.'s IH-6, and no beneficiary objected to them at that time. The duties that the Defendant performed after the death of Yale Rice, Jr. have been delineated above[] and are proper duties for a personal representative to perform[. T]herefore, the fees were properly due and owing. The personal representative fees were further reviewed by and accepted by the Indiana Department of Revenue and their stringent eye to limiting deductions in order to maximize taxes.

## D. Plaintiffs' Attorney Fees

Though Plaintiffs' counsel testified as to his attorney fees, he did not state a statutory basis under which he believed that they should be paid. Defendant will assume that I.C. 30-4-3-11(b)(4), which states that the Court, in its discretion, can award <u>reasonable</u> attorney fees to counsel for a trust beneficiary if a breach of fiduciary duty is found to exist as one of the possible remedies. There was no breach; however, even if the Court were to find a breach, the Plaintiffs have suffered no loss. The Court did not require that the Trustee comply with any special accounting requirements, and the total attorney fees could have been minimized by allowing the

Defendant to respond to the initial accounting request via letter rather than immediately initiating costly litigation. As noted above, this case was replete with errors and omissions by Plaintiffs' counsel; for example, the fact that Plaintiffs' counsel filed suit less than three (3) days after requesting that the Defendant furnish a trust accounting within sixty (60) days. Therefore, Defendant's counsel would assert that the fees charged by Plaintiffs' counsel in this matter are unreasonable, regardless of the amount of write-offs. Also, there has been no breach of fiduciary duty adjudicated in this matter. Because of the foregoing, Plaintiffs' counsel is not entitled to attorney fees under any Indiana statute.

The Plaintiffs further acted to frustrate the course of the litigation by asserting and maintaining meritless objections until the end of the two-day hearing, when they withdrew all of their objections, except those to the trustee fees, attorney fees, valuation of debt and personal property. The terms of Plaintiffs' signed promissory note speak for [themselves], and the three (3) items of personal property valued at less than $1,000.00 in a $3.5 million estate. It is not a breach of fiduciary duty to request trustee fees or attorney fees. Whatever the Court determines is reasonable compensation will dictate the proper amount of fees; there is no breach of trust possible at this point. Even if the Court determines the trustee paid too much in fees, there is no breach unless the trustee fails to comply with the Court's order. Even if the Court were to limit fees, Defendant would be entitled to $62,000.00 to equal the lowest distributee between the Plaintiffs.

**E.      Request for further accounting**

The Plaintiffs finally testified they wanted the Court to appoint a CPA to file yet additional accountings. The Plaintiffs' expert testified that he needed copies of bank statements and checks to give an opinion about them. He further testified that he reviewed a minimal portion of the documents produced in this case, and heard minimal testimony. It is not disputed, however, that the Defendant produced over 3,700 pages of documents that included all of the financial statements, checks, and activity of the trustee over the course of many years. This Court did not require the attachment of any checks/vouchers or any account statements to the Final Accountings in this matter. The Defendant's expert testified that only Marion County, Indiana sometimes requires more detail than the Defendant provided in the estate accountings. The Defendant's expert verified that all of the financial records that supported the assets, liabilities, income, and expenses for the various trusts were all properly recorded and exchanged during discovery. The Plaintiffs' attorney, Defendant's attorneys, Defendant's expert witness, and the parties have had ample time to review all supporting documents. The Court does not need to appoint a CPA to

13

again review all of the documents exchanged during discovery, just because the Plaintiffs did not show the documents to their own expert. The cost of an accountant at this stage would be a further waste of trust assets.

IT IS THEREFORE ORDERED that the Plaintiffs' Petitions and Objections are DENIED. The Court APPROVES $248,724.00 in trustee/personal representative fees and APPROVES outstanding attorney fees based on all time spent at their hourly rates, capped at six percent (6%) of the gross trusts on Yale Rice Jr.'s date of death, plus expenses, with an additional amount of $60,410.29 being due for the time spent through December 1, 2011, and approval of attorney fees already paid in the amount of $107,377.54, as just and reasonable compensation.

Pursuant to Trial Rule 54(B) the Court finds no just reason for delay and enters this as a final order.

Appellee's App. at 1-16. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Where, as here, the trial court has entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. Bowyer v. Ind. Dep't of Natural Res., 882 N.E.2d 754, 761 (Ind. Ct. App. 2008). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. Id. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. Id. We neither reweigh the evidence nor assess the credibility of witnesses but consider only the evidence most favorable to the judgment. Id. We review conclusions of law de novo. Id.

14

## Issue One:  Final Accountings

The Objecting Beneficiaries first contend that the trial court erred when it approved the Final Accountings.  Generally, a trustee bears the burden of justifying the propriety of items in a trust account.  In re Riddle, 946 N.E.2d 61, 68 (Ind. Ct. App. 2011).  But when a trustee files specific accounts and makes a prima facie showing that the accounts are proper, the burden of persuasion shifts to the beneficiaries to show specific instances of impropriety.  Id.

Indiana Code Section 30-4-5-13 sets forth the requirements for "written statements of account" filed with a trial court by a trustee:

(a) A verified written statement of accounts filed with the court under 30-4-5-12 or by the trustee under 30-4-3-18(b) shall show:

(1) the period covered by the account;

(2) the total principal with which the trustee is chargeable according to the last preceding written statement of accounts or the original inventory if there is no preceding statement;

(3) an itemized schedule of all principal cash and property received and disbursed, distributed, or otherwise disposed of during the period;

(4) an itemized schedule of income received and disbursed, distributed, or otherwise disposed of during the period;

(5) the balance of principal and income remaining at the close of the period, how invested, and both the inventory and current market values of all investments;

(6) a statement that the trust has been administered according to its terms;

(7) the names and addresses of all living beneficiaries and a statement identifying any beneficiary known to be under a legal disability;

15

(8) a description of any possible unborn or unascertained beneficiary and his interest in the trust estate; and

(9) the business addresses, if any, or the residence addresses of all the trustees.

(b) The court may, either on petition or on its own motion, require the trustee to submit such proof as it deems necessary to support his verified written statement of accounts. The court may accept the unqualified certificate of a certified public accountant in lieu of other proof.

Here, again, the trial court expressly concluded that Rice had satisfied the statutory requirements when he filed his Final Accountings. And Rice presented expert testimony that supports the trial court's conclusion on this issue.

On appeal, the Objecting Beneficiaries maintain that the Final Accountings "fail to meet the criteria set out in Ind. Code § 30-4-5-13" in the following ways: Rice omitted "multiple payments" from the Final Accountings; the Final Accountings "fail to distinguish between income and principal, and multiple transfers of assets . . . are not disclosed"; as well as multiple "discrepancies" as set out in their brief on appeal. Brief of Appellants at 27. But, while Objecting Beneficiaries cite to numerous pages in the record in support of those contentions, we find nothing in the designated portions of the record supporting their argument on these issues.[3] Moreover, Objecting Beneficiaries do not direct us to portions of the record showing that they raised any of these issues to the trial court. It is well settled that an appellant may not raise an issue on appeal that was not

---

[3] For instance, in support of their contention that "[t]he ending assets listed in the Final Accounting include [a] Chase account, though no Chase account was held by the [Irrevocable Trust,]" Objecting Beneficiaries cite to page 288 of their appendix and Trial Exhibit H. Brief of Appellants at 27. Neither of those citations includes any evidence to support the Objecting Beneficiaries' contention on this issue. To the contrary, those citations include evidence supporting a determination that the Chase account existed. Further, to the extent Objecting Beneficiaries complain about discrepancies between the provisional and final accountings, they do not direct us to any portion of the record showing that the discrepancies are due to anything more than corrections made between the two accountings.

16

first presented to the trial court.  Rausch v. Reinhold, 716 N.E.2d 993, 1002 (Ind. Ct. App. 1999), trans. denied.

Contrary to Objecting Beneficiaries' assertion on appeal, Rice made a prima facie showing that the Final Accounting was proper,[4] and the burden of persuasion properly shifted to the Objecting Beneficiaries to show specific instances of impropriety.  See In re Riddle, 946 N.E.2d at 68.  The trial court observed that Indiana Code Section 30-4-5-14(c) "requires any objections to the trust accountings to be specific.  None of Plaintiffs' objections were specific."  Appellants' App. at 20.  Further, the trial court noted that "most of the objections to the Final Accountings were withdrawn by Plaintiffs' counsel at the end of the final hearing; the remainder of their objections are . . . not proper objections to be raised to a final accounting."  Id.

Objecting Beneficiaries do not counter those conclusions made by the trial court. Instead, they contend merely that Rice did not make a prima facie showing that the Final Accountings were accurate.  Thus, they maintain that the "burden of persuasion never shifted to Harrison and Portell to show specific instances of impropriety."  Brief of Appellants at 9.  The fact that Objecting Beneficiaries do not cite any portion of the record on appeal to show that they made specific objections to the Final Accountings is fatal to their contentions on this issue.[5]  And to the extent the Objecting Beneficiaries

---

[4]  Prima facie means evidence sufficient to establish a given fact and which will be sufficient if contradicted.  Mullins v. State, 646 N.E.2d 40, 50 (Ind. 1995).  Objecting Beneficiaries concede that Curtis Shirley testified that the Final Accountings satisfied the requirements of Indiana Code Section 30-4-5-13.  To the extent that their expert witness disagreed, we will not reweigh the evidence on appeal.

[5]  Objecting Beneficiaries cite pages 389 and 390 of the transcript as evidence that they objected to certain personal property having been charged to them as distributions.  But on page 390, Portell conceded that she did not feel it was "worth pursuing" those issues and that she withdrew her objection on those grounds.

make objections to the Final Accountings on appeal, those contentions amount to a request that we reweigh the evidence, which we will not do. We hold that Rice made a prima facie showing that the Final Accounting satisfied the applicable statutory requirements. Having failed to satisfy their burden of persuasion to show that the Final Accountings were deficient, Objecting Beneficiaries cannot prevail on this issue.[6]

## Issue Two: Breach of Fiduciary Duty

Objecting Beneficiaries next contend that Rice breached his fiduciary duty to them as Trustee. Indiana Code Section 30-4-3-6 provides:

(a) The trustee has a duty to administer the trust according to its terms.

(b) Unless the terms of the trust provide otherwise, the trustee also has a duty to do the following:

(1) Administer the trust in a manner consistent with IC 30-4-3.5.
(2) Take possession of and maintain control over the trust property.
(3) Preserve the trust property.
(4) Make the trust property productive for both the income and remainder beneficiary. As used in this subdivision, "productive" includes the production of income or investment for potential appreciation.
(5) Keep the trust property separate from the trustee's individual property and separate from or clearly identifiable from property subject to another trust.
(6) Maintain clear and accurate accounts with respect to the trust estate.
(7) Upon reasonable request, give the beneficiary complete and accurate information concerning any matter related to the

_____

[6] Objecting Beneficiaries also contest Rice's calculation of Portell's debt to Yale, but they do not direct us to anything in the record showing that they raised this issue to the trial court. The issue is waived. And to the extent Objecting Beneficiaries complain that Rice did not provide documentation to support the stated amount owed, Indiana Code Section 30-4-5-13 provides that the trial court may require the trustee to submit such proof as it deems necessary to support his verified written statement of accounts. But the trial court did not require such proof. As such, Objecting Beneficiaries' contention on this issue must fail.

18

administration of the trust and permit the beneficiary or the beneficiary's agent to inspect the trust property, the trustee's accounts, and any other documents concerning the administration of the trust.

(8) Take whatever action is reasonable to realize on claims constituting part of the trust property.

(9) Defend actions involving the trust estate.

(10) Supervise any person to whom authority has been delegated.

(11) Determine the trust beneficiaries by acting on information:

> (A) the trustee, by reasonable inquiry, considers reliable; and
>
> (B) with respect to heirship, relationship, survivorship, or any other issue relative to determining a trust beneficiary.

A trust is "a fiduciary relationship between a person who, as trustee, holds title to property and another person for whom, as beneficiary, the title is held." Ind. Code § 30-4-1-1(a). And a breach of trust is "a violation by the trustee of any duty that is owed to the settler or the beneficiary." Ind. Code § 30-4-1-2(4).

The Objecting Beneficiaries contend that Rice breached his fiduciary duty in two respects, namely, in failing to provide complete and accurate accountings and in failing to timely distribute assets to the beneficiaries. Because we hold that the Final Accountings complied with Indiana Code Section 30-4-5-13, we need only address the second contention on this issue.

The Objecting Beneficiaries maintain that "the only evidence regarding how much time the Trusts in this case should have taken to administer" was their expert witness' testimony that two to three months was a reasonable time. Brief of Appellants at 34-35. And the Objecting Beneficiaries assert that Rice made no distributions, other than to himself, until "more than six months" after Yale's death in January 2010. Id. at 35.

19

Further, they contend that had the distributions been completed within that time frame, the attorney's fees would have been significantly less.

But Rice presented evidence that he had made the following distributions in January and March 2010 to the Objecting Beneficiaries: $106,841.15 to Portell (debt forgiveness); $3,024 in personal property to Harrison; and $4,649.50 in personal property to Portell. And in May, Rice transferred ownership in real estate located on Westleigh Drive in Indianapolis and valued at $138,500 to Harrison. Finally, on August 5, Rice distributed $231,911.67 each to Portell and Harrison. The Objecting Beneficiaries do not direct us to any case law or other authority to support their contention that the timing of those distributions constituted a breach of fiduciary duty.

Moreover, Rice presented evidence that because "[t]here was great discussion about what [C]ongress was going to do" with respect to federal estate taxes in 2010, he was advised to "watch[] and monitor[] that issue" for a few months before making all of the distributions. Transcript at 200. And, as the Objecting Beneficiaries concede, the terms of the Trusts gave Rice discretion in making distributions. Finally, Rice did not receive the proceeds of a life insurance policy until July 15, 2010. Rice maintains that the delays in making the final distributions were due to his "reasonable care and prudence" in exercising his fiduciary duties. Brief of Appellee at 30. The Objecting Beneficiaries have not demonstrated that Rice breached his fiduciary duty as Trustee.[7]

---

[7] In the context of their argument regarding the alleged breach of fiduciary duty, the Objecting Beneficiaries contend that the trial court "erred when it failed to acknowledge that Rice had been removed as Trustee." Brief of Appellants at 37. While the record shows that the trial court removed Rice as Trustee per the Objecting Beneficiaries' wishes in August 2010, the successor trustee, JP Morgan Chase Bank, N.A. declined to serve as trustee, and the trial court accepted that "declination" in January 2011. Appellee's App. at 282. Accordingly, Rice resumed his role as Trustee, and the Objecting Beneficiaries

20

See, e.g., In re Wilson, 930 N.E.2d 646, 651 (Ind. Ct. App. 2010) (holding no breach of fiduciary duty where delay in selling real estate was result of actions that were "prudently taken, well considered, and taken upon the advice of counsel."), trans. denied; cf. In re Eiteljorg, 951 N.E.2d 565, 570 (Ind. Ct. App. 2011) (affirming trial court's judgment finding breach of fiduciary duty where no distributions made more than eighteen months after death of beneficiaries' mother), trans. denied.

### Issue Three:  Fees

The Objecting Beneficiaries next contend that the trial court erred when it approved fees to Rice for his role as trustee and personal representative, as well as fees incurred by attorneys hired by Rice.  We address each contention in turn.

### Trustee Fees

The Objecting Beneficiaries first contend that Rice is not entitled to trustee fees under the terms of the "Memorandum of Understanding and intra-family agreement concerning Yale Rice, Jr." ("the Family Agreement") executed by Yale and Rice on May 27, 2008.  Exhibit 9.  In particular, the Objecting Beneficiaries maintain that paragraph 12 dictates any remuneration due Rice:

> It is agreed that no individual family member shall take any remuneration for the work or procedures handled for Dad.  Should the time required to handle the affairs take more than that is reasonably expected, then payment shall be up to Dad.  If Dad is not then able to make such a decision, then upon the agreement of one other sibling [sic] and shall fall under the category as non-reocurring [sic] expenses; payment for such services shall be limited to the average independent compensation which is agreed at this time to be $20.00 per hour.

do not direct us to any part of the record showing that they objected to that conduct by Rice.  Any error in this regard is waived.

21

Id. The Objecting Beneficiaries contend that because neither Yale nor either sibling ever agreed to compensate Rice for his services as Trustee, the terms of the Family Agreement preclude any remuneration.

First, the Objecting Beneficiaries have not directed us to any portion of the record on appeal showing that they asserted this argument to the trial court. Regardless, the Family Agreement, read as a whole, indicates that its purpose was to manage the health and welfare of Yale during his lifetime. And, as the Objecting Beneficiaries concede, the terms of the Trusts expressly permit trustee fees. To the extent that the Objecting Beneficiaries maintain that the Family Agreement governs with respect to Rice's compensation as Trustee or that Rice is not entitled to any such compensation, we reject that contention.

The Objecting Beneficiaries also challenge the amount of trustee fees paid to Rice. In support of that contention, they assert that "[t]he evidence presented to the trial court demonstrated that Rice's fees exceeded what even a corporate fiduciary would have charged for the same services." Brief of Appellants at 39. But their argument on this issue is nothing more than a request that we reweigh the evidence, which, again, we will not do. Attorney Curtis Shirley testified that: the Trusts expressly provided for a trustee's fee equal to the "customary and prevailing charges;"[8] "the only possible interpretation . . . of that is to look at what financial institutions like banks and trust companies charge;" and "the amount of trustee fees that [Rice] is seeking is fair."

---

[8] One of the trusts provided for trustee fees in accordance with "an established schedule of fees." Transcript at 239.

22

Transcript at 239. The trial court did not err when it awarded Rice trustee fees in the amount of $193,284.34.

### Personal Representative Fees

The Objecting Beneficiaries next contend that Rice's personal representative fees were "improper and/or excessive." Brief of Appellants at 41. They allege that Rice did not act as personal representative because no estate was opened following Yale's death. Further, with respect to the trial court's finding that Rice performed services as a personal representative,[9] the Objecting Beneficiaries contend that there was "no evidence regarding the time worked or value of those services to the heirs." Id. Rice paid himself $55,439.91 in personal representative fees.

The Objecting Beneficiaries do not challenge the following findings by the trial court:

> 43. The personal representative fees were disclosed on Yale Rice, Jr.'s IH-6, filed on or about October 22, 2010. At no time did any beneficiary object to the IH-6, and at no time did any beneficiary file their own IH-6, and a closing letter was then properly issued by the Indiana Department of Revenue.
>
> * * *
>
> 46. The Plaintiffs themselves acknowledge [Rice] in the role of personal representative in Paragraph 11 of Plaintiffs' Amended Complaint, wherein they state that [Rice] is serving not only as Trustee, but also as Personal Representative of the Estate of Yale Rice, Jr.; therefore, this should be a non-issue.

Appellee's App. at 8-9. Further, as Rice points out, the terms of the Trusts define "personal representative" to include "an executor, administrator, guardian, custodian,

---

[9] The trial court found that Rice "performed numerous personal representative duties after the death" of Yale, including: assisting in the preparation of the inheritance tax return; arranging payment for funeral services, headstone, and burial; collected monies owed to Yale after his death; notifying interested parties of Yale's death; and facilitated preparation of Yale's income tax returns. Appellee's App. at 8-9.

23

conservator, trustee, or any other form of personal representative." Exhibit KK. And the trial court concluded that

> [t]he duties that the Defendant performed after the death of Yale Rice, Jr. have been delineated above, and are proper duties for a personal representative to perform, therefore, the fees were properly due and owing. The personal representative fees were further reviewed by and accepted by the Indiana Department of Revenue and their [sic] stringent eye to limiting deductions in order to maximize taxes.

Appellee's App. at 14.

Indiana Code Section 29-1-10-13 provides that where a testator does not provide for the compensation of the personal representative and the attorney performing services for the estate, the trial court is authorized to award reasonable fees. The amount of fees to be awarded is within the trial court's discretion and will not be disturbed absent an abuse of discretion. Ford v. Peoples Trust and Savings Bank, 651 N.E.2d 1193, 1194 (Ind. Ct. App. 1995), trans. denied. Moreover, we have recognized the trial court's particular expertise in determining the value of the services rendered. Id. In determining a reasonable amount of fees, the trial court may consider many factors, including the labor performed, the nature of the estate, difficulties in recovering assets or locating devisees, and the peculiar qualifications of the administrator.

Here, the Objecting Beneficiaries do not dispute that Rice performed several duties consistent with those normally performed by a personal representative, and they made no objection to the amount of fees claimed by Rice on the IH-6 form approved by the Indiana Department of Revenue. The Objecting Beneficiaries have not demonstrated that the trial court abused its discretion when it approved the personal representative fees.

24

**Attorney's Fees**

Finally, the Objecting Beneficiaries contend that the trial court abused its discretion when it awarded attorney's fees to Rice. In particular, they maintain that the evidence is insufficient to support the award of $167,787.83. We cannot agree.

The award or denial of attorney fees is within the sound discretion of the trial court, and in the absence of error or an abuse of that discretion, we must affirm the trial court's decision. Hanson v. Valma M. Hanson Revocable Trust, 855 N.E.2d 655, 663 (Ind. Ct. App. 2006). Again, with respect to the attorney's fees paid to Stevens and Associates in this matter, the trial court concluded:

> The trusts specifically authorize the Defendant to hire and set compensation for attorneys. Had the trusts been silent, there are multiple Indiana Code sections which permit an attorney to charge a reasonable fee for representation of a Trustee in the administration of a trust [I.C. 30-4-3-3(a)(10) and 30-4-3-3(a)(16)]. However, the "reasonableness" standard for any attorney fee is governed by Indiana Rule of Professional Conduct 1.5, which sets forth several factors in determining whether the fees charged are reasonable. The Defendant's expert witness report has addressed these in detail, and Defendant asserts that the fee charged in this case is reasonable. Counsel for the Defendant has documented all time spent in this case, charges a reasonable and consistent hourly rate, has represented the Defendant for an extended period of time, entered into representation in writing with the client, and has provided billing records and invoices to Defendant and Plaintiffs multiple times, as well as on Yale Rice Jr.'s IH-6. It also must be emphasized in this case, as noted above, that this is not a typical, usual, and customary trust case; it involves multiple beneficiaries in conflict, errors by Plaintiffs' counsel, multiple discovery requests, and complex litigation, which continues to be ongoing. Based on the foregoing, the attorney fees contained in the Defendant Petition for Approval of Attorney Fees in this case are reasonable.

Appellee's App. at 13.

Tamatha Stevens testified that she had spent more than 300 hours working on this matter through December 2011 and that she had worked "substantial" additional hours

thereafter in preparation for the final hearing. Transcript at 207. Stevens testified that her hourly rate was $350. And Curtis Shirley testified that the attorneys' hourly rates were appropriate and that they spent an appropriate number of hours working on the matter. The trial court did not abuse its discretion when it awarded attorney's fees to Rice.

## Conclusion

Rice made a <u>prima</u> <u>facie</u> showing that the trust accounts were proper, and the Objecting Beneficiaries did not sustain their burden of persuasion to show specific instances of impropriety. The trial court did not err when it found no breach of fiduciary duty by Rice. And the trial court did not abuse its discretion when it awarded trustee fees, personal representative fees, or attorney's fees.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.