## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 10 2016, 6:51 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| APPELLANT PRO SE | ATTORNEY FOR APPELLEE |
|---|---|
| Robert Vega | Robert F. Tweedle |
| Valparaiso, Indiana | Highland, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Vega,<br>*Appellant-Defendant,*<br><br>v.<br><br>Autumn Ridge Condominium<br>Association Board of Directors,<br>*Appellee-Plaintiff* | February 10, 2016<br><br>Court of Appeals Case No.<br>45A03-1507-SC-1022<br><br>Appeal from the Lake Superior<br>Court<br><br>The Honorable Catheron A. Paras,<br>Judge Pro Tempore<br><br>Trial Court Cause No.<br>45D07-1503-SC-228 |

**Mathias, Judge.**

[1] Robert Vega ("Vega") filed a small claims action in Lake Superior Court against the Autumn Ridge Condominium Association ("ARCA") Board of Directors ("the Board") for reimbursement of a fireplace gas valve and alleged

misconduct by the Board. The small claims court entered judgment in favor of the Board. Vega appeals and raises two issues, which we restate as:

I. Whether the small claims court erred when it determined that the gas valve was not a common use item and therefore not subject to reimbursement under ARCA's Declaration of Condominium provisions and;

II. Whether the small claims court abused its discretion when it declined to hear Vega's additional claims based on ARCA's board member eligibility and general performance issues.

We affirm.

**Facts and Procedural History**

Vega lived in a condominium at Autumn Ridge. He noticed a leak in his fireplace gas line. In August 2013, Vega hired Salyer Plumbing, Inc. ("Salyer") to make the necessary repairs, which included removal of interior drywall in order to gain access to the gas valve at issue. Vega requested reimbursement for the replaced gas valve from the Board under the Declaration of Condominium, but the Board refused.

The ARCA Declaration of Condominium provides in relevant part:

IV. <u>Maintenance, Repair, Replacement and Alteration of Apartments and Common and Limited Common Areas</u>.

A. <u>By the Apartment Owner</u>.

1. <u>Maintenance, Repair, and Replacement</u>. It shall be the responsibility of the Apartment Owner to

maintain, repair, and replace at the Apartment Owner's expense all portions of the Apartment within the boundaries of the Apartment as described in Article V., excepting only those portions and items for which the responsibility for maintenance, repair and replacement is the specific responsibility of the Association under Article IV.B., and including all heating and air conditioning units, . . .

\*\*\*

B. <u>By the Association</u>.

2. <u>Maintenance, Repair and Replacement of Portions of the Condominium Located Within the Boundaries of Apartments</u>. It shall be the responsibility of the Association to maintain, repair and replace within the boundaries of each Apartment as described in Article V. all portions of the Building structure, and all portions of the Apartment which contribute to the support of the Building and the Apartment boundaries, and which are otherwise in common use, including but not limited to, load bearing walls, all conduits, ducts, piping, plumbing, wiring, and other facilities for the furnishing of utilities, communications, television and security services, but excluding all appliances, plumbing fixtures, electrical and lighting fixtures, and heating and air conditioning units and circuit breaker panels; but shall also include all incidental damage caused to the Apartment by such work as may be done or caused to be done by the Association in accordance with this Article IV.B.

\*\*\*

V. Description of Apartments.

B. Boundaries. Each apartment shall be bounded as to both horizontal and vertical boundaries as shown on the Plans attached as Exhibit "A", subject to such encroachments as are contained in the Building whether the same exist now or are created by construction, settlement or movement of the Building, or permissible repairs, reconstruction, or alterations. Said boundaries are intended to be as follows:

1. Horizontal Boundaries:

a. the interior surface of drywall ceiling above and abutting the Apartment.

b. the interior top surfaces of the flooring below the finished floor covering and abutting the Apartment.

2. Vertical Boundaries:

a. the interior surfaces of the drywall of the boundary walls of each Apartment.

Appellant's App. pp. 8-10.

On March 26, 2015, Vega filed a small claims action against the Board in Lake Superior Court, requesting judgment for costs associated with the gas valve replacement. He also alleged that: 1) the board president was ineligible to serve, which would invalidate board actions; 2) willful misfeasance voided indemnification for directors; 3) board actions had not protected the value of

property nor provided for a congenial occupation; and 4) board actions had been arbitrary and capricious. Appellant's App. p. 5.

[6] A bench trial was held on June 17, 2015. At trial, Vega presented evidence on the disputed repair invoice and then attempted to present evidence for his allegations of Board misconduct. The Board objected and asserted that Vega was attempting a derivative action and that he had no standing for such action. The small claims court sustained the Board's objection and took the matter under advisement. On July 13, 2015, the court entered judgment in favor of the Board. Vega now appeals.

## I. Gas Valve Reimbursement

[7] Vega argues that the small claims court did not correctly apply the law to the facts when it determined that the gas line was within the apartment boundaries as provided in the Declaration of Condominium contract. Specifically, Vega argues that the Board should reimburse him for the cost of the gas valve replacement because the gas line was in the wall and outside of the vertical boundaries of the apartment.

[8] The construction of the terms of a written contract is a pure question of law, which we review de novo. *Fraternal Order of Police, Evansville Lodge, No. 73, Inc. v. City of Evansville*, 940 N.E.2d 314, 318 (Ind. Ct. App. 2010).

> When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. First, we must determine whether the language is ambiguous. The

unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract. If, on the other hand, a contract is ambiguous, its meaning must be determined by examining extrinsic evidence and its construction is a matter for the fact finder. When interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was made. We will do this by examining the language used in the instrument to express their rights and duties. We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless. We must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict.

*Id.* at 318-19 (quoting *Whitaker v. Brunner*, 814 N.E.2d 288, 293-94 (Ind. Ct. App. 2004)).

[9]     In the case before us, ARCA is required to:

maintain, repair, and replace within the boundaries of each Apartment as described in Article V. all portions of the Building structure, and all portions of the Apartment which contribute to the support of the Building and the Apartment boundaries, and *which are otherwise in common use*, including but not limited to, load bearing walls, all conduits, ducts, piping, plumbing, wiring, and other facilities for the furnishing of utilities, communications, television and security services, but excluding all appliances, plumbing fixtures, electrical and lighting fixtures, and heating and air conditioning units and circuit breaker panels.

Appellant's App. p. 10 (emphasis added).

[10]    Construing this provision in the context of the entire contract, we conclude that ARCA is responsible for maintenance, repair, and replacement of common use

items. Although the gas line was located in the wall, which was outside the defined apartment boundaries, this gas line only served Vega's fireplace. As such, it is not for common use, but rather for individual use. By way of example, the provision listed other common use items that ARCA would maintain, repair, or replace. None of the items on the list benefit an individual apartment, but rather the members of ARCA as a whole. We therefore conclude that the small claims court properly determined that ARCA was not required to reimburse Vega for the gas valve replacement cost.

## II. Vega's Additional Claims Against the Board

[11] Vega also argues that the small claims court erred when it declined to hear his additional claims based on ARCA's board member eligibility and general performance issues. However, no evidence in the record supports these claims on appeal. Indiana Appellate Rule 46(A)(8)(a) provides in relevant part:

> The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22.

[12] We will deem alleged errors waived where an appellant's noncompliance with the rules of appellate procedure is so substantial that it impedes our appellate consideration of the errors. *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind. Ct. App. 2004). It is well settled that we will not consider an appellant's assertion on appeal when he has failed to present cogent argument supported by

authority and references to the record as required by the rules. *Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind. Ct. App. 2003).

[13] In Vega's claim filed with the small claims court, he cited to exhibits six through sixteen to support the additional claims. Appellant's App. p. 5. Vega only provided exhibits in his appendix to support the gas valve replacement reimbursement claim against the Board and failed to request a trial transcript in his notice of appeal. *See* Appellant's App. pp. 6-10. Although Vega cites to some authority to support his argument on these additional claims, he did not rely on the record whatsoever. We recognize that Vega is a *pro se* litigant, but a litigant who chooses to proceed *pro se* will be held to the same rules of procedure as trained legal counsel and must be prepared to accept the consequences of his action. *Thacker*, 797 N.E.2d at 345. Vega's argument is not supported by cogent reasoning, and therefore, it is waived and will not be considered by our court.

## Conclusion

[14] The small claims court properly determined that Vega was not entitled to reimbursement for the gas valve replacement cost from ARCA under the Declaration of Condominium. Further, Vega's additional claims are not supported by cogent reasoning and will not be considered.

[15] Affirmed.

Kirsch, J., and Brown, J., concur.